OLIVER *v.* CUNNINGHAM and others.

(*Circuit Court, E. D. Michigan.* April 17, 1881.)

1. MORTGAGOR AND MORTGAGEE—POSSESSION—FRAUD.

The sale of an equity of redemption will be closely scrutinized, when such equity has been purchased by the mortgagee.

2. SAME—FRAUD.

In such case, constructive fraud, or an unconscionable advantage, will be sufficient to avoid the sale.

3. SAME—RES ADJUDICATA.

The judgment of a court, in a suit to foreclose a mortgage, is not *res adjudicata* as to any matter which the defendant was not entitled, as a matter of right, to have litigated in such suit.—[ED.

In Equity.

*Alfred Russell* and *Walker* and *Burton,* for complainant.

*H. M. Duffield* and *Mr. Lathrop,* for defendants.

WITHEY, D. J. This is a bill to set aside a conveyance of the property in question, made by complainant to the defendant Cunningham, which it is claimed was made to enable him, Cunningham, to satisfy from the issues of the estate, by sale or otherwise, a mortgage of $35,000 held by himself and his co-defendants Hunt and Eschelman, together with other indebtedness of Oliver. The bill also asks to have set aside a conveyance of the same lands made by the defendant Cunningham to his co-defendants G. J. Robinson, Haines, and Ranney; and for an accounting by all the defendants for the issues, rents, and profits of the property since the second-named conveyance.

It is alleged that the conveyance to Robinson, Haines, and Ranney was made for the benefit of all the defendants, including Cunningham himself, and with full knowledge on their part of all Oliver's rights in the premises. I shall not enter upon an elaborate discussion of the evidence, or give at length the reasons for my conclusions, but content myself by stating the principal facts, my conclusions, and briefly the reasons therefor.

In the summer or fall of 1868 Oliver owned about 12,500 acres of pine lands, and held a contract for the purchase of

v.7,no.7—44

6,500 acres from David Preston. These lands were situated in the counties of Alpena, Alcona, and adjoining counties. Garrett B. Hunt, Jacob Eschelman, and Henry S. Cunningham held a purchase-money mortgage upon all the lands in townships 28 and 29 north of range 8 east, amounting to about 6,500 acres, to secure the payment of $35,000 and interest, given to them by Oliver, who was then carrying on business at a place called Ossineke, in the vicinity of the property, in the manufacture and sale of lumber from the lands above mentioned, in copartnership with the defendant George J. Robinson. The lands covered by the Cunningham, Hunt, and Eschelman mortgage were also encumbered by other mortgages and claims, amounting with said $35,000 to about $100,000. Oliver & Robinson owed about $36,000. The value of the real estate at this time was, as estimated by Oliver, $226,000, including mills and dock; and the personal property about $70,000. Making a liberal allowance for over-estimate, Oliver's assets must at this time have exceeded his liabilities by about $150,000; but he was manifestly embarrassed financially. As early as June, 1868, some difficulty had grown up between Oliver and his partner; and, realizing his financial embarrassment, he appealed by letter to defendants Hunt and Cunningham, two of the mortgagees, to obtain assistance, stating fully to them his assets and liabilities, and the obstacles to a successful prosecution of the business, interposed by his partner Robinson, and proposing to deed his property to them in trust for the payment of his indebtedness, and in July following visited Buffalo and had a personal conference touching the same matter. On the third of September we find Cunningham, who was doing business in Buffalo, N. Y., at Oliver's place of business in Michigan, when Oliver executed deeds of conveyance to him of all his interest in all his lands, and a bill of sale of the personal property. Before leaving Buffalo, and before receiving the conveyance from Oliver, Cunningham, by advice of counsel, executed an assignment of his interest in the mortgage to his co-mortgagees, Hunt and Eschelman, without, however, receiving any consideration therefor. Cunningham paid no

consideration whatever for the transfer to him by Oliver. He returned to Buffalo, and he and Oliver both commenced making efforts for a sale of the property. About the first of October, Oliver went to Buffalo, in answer to a telegram from Cunningham. A sale of a large portion of the lands, including those covered by the $35,000 mortgage now held by Hunt and Eschelman, and all the personal property, was negotiated to defendants George S. Robinson, Haines, and Ranney. An agreement for the sale of such property was drawn up and signed by Cunningham, Robinson, Haines, and Ranney, which agreement, however, Oliver insists was not assented to by him, and did not embody the terms which had been previously agreed upon between the parties. Preceding this agreement for sale there had been interviews between Robinson, Haines, Cunningham, and Hunt, upon the subject of acquiring this property. Cunningham had received nothing for the transfer to Hunt and Eschelman of his mortgage interest, and the fact of such transfer was not communicated to Oliver. At the time of taking the conveyance at Ossineke, Cunningham refused to give a defeasance showing the nature of the trust, and declared that if Oliver insisted upon this he would have nothing to do with the property. On the third of November, succeeding these transactions, a partnership memorandum was drawn up between G. J. Robinson, Haines, and Ranney, in which Hunt and Eschelman are referred to as possible future partners. Following upon this, the transfer of the property is finally made to Robinson, Haines, and Ranney, and in December a meeting of certain of the parties was held at Tonawanda for the purpose of providing funds to conduct the lumbering business and make certain improvements upon the property, at which meeting Hunt and Eschelman and defendant H. M. Robinson were present. On the seventh of January following, Cunningham became an open partner in the new concern, contributing as capital the $35,000 mortgage, the legal title to which vested in Hunt and Eschelman. The capital supplied to the firm, nominally, by George J. Robinson, is found to have been a $20,000 claim which he had against Oliver in event of his electing to retire from the firm

of Oliver & Robinson, and the Wayne mortgage, so called, which was contributed to the firm by H. M. Robinson, and upon the bond accompanying which he afterwards brought suit at law against Oliver after it had so been contributed as a part of the capital stock of the firm. It should be added that H. M. Robinson was one of the active parties engaged in consummating the so-called Buffalo agreement, as well as in forming the new partnership; indeed, it may be said that he was the real man representing the Robinson interest in the original firm of Oliver & Robinson; and the transactions in question, as well as the evidence in the case, clearly indicate that he so continued in a great measure after the formation of the new firm. It appears that Hunt & Eschelman, pending the transactions above stated, bought most of the mortgages against the property in question, including the C. Haines & Co. mortgage, which was, after assignment to Hunt, put in as capital stock in the new firm by Haines and Ranney, who composed said firm of said Haines & Co., and the E. & G. R. Haines mortgage, for which Hunt gave his notes, which were afterwards paid by the firm of Cunningham, Robinson, Haines & Co., and never presented to Hunt.

Notwithstanding the fact that the $35,000 mortgage had been put into the firm as capital stock, Hunt and Eschelman afterwards instituted proceedings to foreclose the same, to which proceedings we shall hereafter have occasion to allude. And it appears that the firm of Cunningham, Robinson, Haines & Co. paid all the expense of such foreclosure, and subsequently received $46,000 as the proceeds of timber sold from the lands covered by sale, although Hunt was the nominal purchaser at the sale. A letter of Cunningham to G. J. Robinson, of date January 25, 1872, refers to Eschelman as "a very quiet and comfortable partner." The copartnership articles between Cunningham, Robinson, Haines & Ranney were signed for Cunningham by Hunt, who is his father-in-law, thus establishing the fact that Hunt then knew that Cunningham was using the mortgage, the legal title to which was in Hunt and Eschelman as capital stock in the firm. Although Oliver proposed voluntarily to place the title to his

property in Cunningham, if we keep in view his embarrassed condition, it is plain that it was with the object to save the excess of its value over his indebtedness. Whatever may be said in relation to Cunningham's acts prior to the conveyance to him of September 3d, his transactions respecting the property subsequent to that time, as well as those of his co-defendants, which Oliver charges to have been fraudulent, required to be closely scrutinized as dealings between a mortgagor of the property in question and a mortgagee who entered into possession under a conveyance, one purpose of which was to enable him to make the amount of his mortgage out of the property, as we entertain no doubt that notwithstanding the paper assignment of Cunningham to his co-mortgagees, in view of the subsequent dealings of the parties, and of the fact that intelligence of such assignment was not communicated to Oliver, Cunningham, Hunt, and Eschelman retained a common interest in the mortgage, and that Cunningham, for all the purposes of this case, at least, must be treated as though such assignment had never been made. What seems to be conclusive upon this subject is the use which Cunningham was subsequently allowed to make of this mortgage security in contributing it as capital in the copartnership formed January 7, 1869; and it must be held, in view of all the facts in the case, that Cunningham, in the formation of that firm, represented his co-mortgagees, Hunt and Eschelman, as well as himself. It must be held, also, that George J. Robinson represented in said firm himself and his father, Henry M. Robinson, as well.

The testimony in the case abundantly establishes that all of these defendants must have known of the trust with which the property was charged; and we think that it is also established that the transfer to Robinson, Haines, and Ranney, and the subsequent dealings with the property under the firm name of Cunningham, Robinson, Haines & Co., were in the interest of all the defendants. It should be borne in mind that, at the times of these transactions, each of these defendants stood in the relation of either creditor or mort-

gagee of Oliver, and were dealing with their debtor in embarassed circumstances.

The transfer by Oliver to Cunningham of this property, if any other view was necessary to be taken, could be regarded in no other light than making Cunningham the trustee of Oliver's property. If, then, Cunningham was still interested, notwithstanding his assignment of it, in the $35,000 mortgage, and was subsequently so regarded by Hunt and Eschelman, then any disposition of the property held by him in his own interest, or for his own benefit, would be a fraud, and render any such transfer void, not only as to himself, but as to all other parties dealing with him, with notice of his relation to the property.

Without going through the testimony in detail, it is manifest that Oliver has received nothing like adequate consideration for his large property. It is not overlooked by the court that Oliver was to receive back the Preston-contract lands, and other lands outside of towns 28 and 29; and that, under the Buffalo agreement, Robinson, Haines, and Ranney were to pay the contract price of the Preston lands—$10,500; nor that the new firm paid unsecured debts. But, nevertheless, the case is regarded as clearly within the doctrine stated in *Russell* v. *Southard*, 12 How. 154, as a transaction that should be scrutinized to see whether any undue advantage has been taken of the mortgagor, in reference to which the court says:

"We think that inasmuch as the mortgagee in possession may exercise an undue influence over the mortgagor, especially if the latter be in needy circumstances, the purchase by the former of the equity of redemption is to be carefully scrutinized when fraud is charged, and that only constructive fraud, or an unconscientious advantage, which ought not to be retained, need be shown to avoid such a purchase."

Again, in *Pugh* v. *Davis*, 96 U. S. 337, the court says:

"A subsequent release of the equity of redemption may undoubtedly be made to the mortgagee. There is nothing in the policy of the law which forbids the transfer to him of the debtor's interest. The transaction will, however, be closely scrutinized, so as to prevent any oppression of the debtor."

Viewed in the light of these authorities, the transactions

of these defendants must be held to be a fraud upon the rights of Oliver, and we find nothing in the facts which estop him from asserting such fraud, and obtaining relief in this suit. As has been already stated, the defendants Hunt & Eschelman, after the formation of the new co-partnership, proceeded to foreclose the $35,000 mortgage. Oliver, in that case, interposed a defence, setting up by way of answer, as well as by cross-bill, the transactions, or a portion of them, detailed in the present bill, and it is insisted by the defence that the questions sought to be raised by complainant are *res adjudicata* as to Hunt & Eschelman.

Whether the judgment in the foreclosure case is a bar to the present action, depends upon whether the subject-matter of the suit, pleaded as a defence to that, constituted a subject-matter which the defendant Oliver was entitled to interpose against a decree of foreclosure. If he was entitled to avail himself, as a defence to the foreclosure, of the matters which he brings forward in this suit, and did set up such a defence, and introduce evidence in support of it, no matter upon what ground the court gave to the mortgagees a decree of foreclosure and sale, that judgment would be a bar against setting up the same transactions by an original bill against the same parties. It would make no difference that the court held that the defence could not be allowed, and that Oliver must bring his original bill, if, as a matter of law, it was admissible to defeat a foreclosure of the mortgage. The proceeding would be none the less a bar to this suit. For a correction of the error of the court in thus deciding, the party would be remanded to his remedy by review. While, on the other hand, if the subject-matter of this suit was not admissible as a defence to the foreclosure, for the reason that it involved the rights of other parties, strangers to the mortgage, as well as property other than that covered by that of the mortgage, which must have been affected by any decree based upon the defence then urged, in that case, though it may have been set up in a proceeding, it would be no bar to this bill.

The supreme court of Michigan, in *Jacobson* v. *Miller*, 41

Mich. 90, says, as to the doctrine of adjudication in a former suit, that it is conclusive in respect (1) to the subject-matter of the litigation. The subject-matter of the litigation in the foreclosure case was the establishment of a lien upon a portion of the property involved in the present controversy, and to have a decree of foreclosure for the mortgage debt. (2) Conclusive as to all points of fact or law, or both, necessarily settled in determining the issue on the subject-matter. Let it be assumed that the court did not determine in the foreclosure case as to the facts set up by the answer and cross-bill,—though it would make no difference whether it did or not,—but did determine, as a matter of law, that Oliver could not avail himself of the transactions, no matter for what reason, when, as a matter of law, he was entitled to have his defence considered, then such judgment is *res adjudicata* and a bar to this suit, because it was necessarily settled in that case that the transactions here pleaded constituted no defence to the the foreclosure.

We have stated what was the subject-matter of the litigation in the foreclosure on the part of the complainant. Now, the subject-matter of the litigation as respects Oliver, in that foreclosure, was the right to have whatever defence he was entitled to make determined in that suit, and the judgment of the court would not be *res adjudicata* as to any matter which he was not so entitled, as a matter of right, to have litigated there. It only becomes necessary, as it seems to me, then, to determine whether, as a matter of law, Oliver was entitled to interpose the transactions brought forward in the present suit as a defendant to a decree of foreclosure. As already intimated, if H. M. Robinson, not a party to the foreclosure, but a defendant here, was a necessary party to any suit in which the transactions in controversy were to be decided, then, as he could not be made a party to that foreclosure, it was not Oliver's right to interpose the subject-matter of this suit as a defence to that. It has already been stated that H. M. Robinson was interested with his co-defendants in the business and profits of the firm of Cunningham,

Robinson, Haines & Co. We have, therefore, concluded that the complainant Oliver is entitled to a decree that shall afford him suitable and proper relief.

Before a final decree can be made there must be a reference to a master to state an account. In stating such account, timber taken from the lands and the personal property received by the defendants will be charged against them as follows, viz.:

| | |
|---|---:|
| Value of timber, | $110,000 |
| Personal property, including logs, teams, and lumbering supplies, and goods in store, | 70,000 |
| Accounts and bills receivable transferred to Cunningham by Oliver, | 11,000 |

The defendants should be credited as follows:

| | |
|---|---:|
| G. J. Robinson's interest in the firm of Oliver & Robinson in case of his election to retire, | 20,000 |
| Cunningham, Hunt, and Eschelman mortgage, | 37,450 |
| Amount paid David Preston, | 12,287 |
| C. Haines & Co. mortgage, | 16,000 |
| Paid to Joseph Hill, | 1,000 |
| Paid for E. & G. R. Haines mortgage, | 6,000 |
| Oliver & Robinson's debts, | 25,000 |
| Amount of Wayne mortgage, | 10,000 |
| | $127,739 |

The defendants should be allowed on such accounts for the taxes paid. Interest on the balance should be computed at the rate of 7 per cent. per annum from October 17, 1874, the date of the final sale of timber by defendants, to the date of the master's report. The proofs do not disclose any earlier time which the court would feel justified in fixing as the date from which interest should be computed, and the defendants should also be allowed a reduction from the amount charged against them for notes and accounts to the extent that they were uncollectible.

The decree will also provide for the reconveyance of all the lands transferred by Oliver, as well those in townships 28 and 29 north, as those lying outside of those townships not heretofore reconveyed to complainant. The claim of complainant for allowance for the mill burned while in defendants' control, cannot be allowed, as we think there is no

proof creating a liability against the defendants therefor. It is not shown that insurance would have been effected upon the steam saw-mill at anything like rates that would justify insurance, and it is not shown that its loss by fire was the result of any negligence or want of that degree of prudence which a prudent man would exercise in reference to his own property.