## SALTONSTALL *v.* WIEBUSCH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 150.　Argued January 15, 1895. — Decided March 4, 1895.

Carpenters' pincers, scythes, and grass-hooks, made of forged steel, imported into the United States in March, 1889, were dutiable under the last clause of Schedule C in the act of March 3, 1883, c. 21, 22 Stat. 488, 500, as "manufactures, articles or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, or any other metal.

THIS was an action by a corporation known as Wiebusch & Hilger, Limited, against the collector of the port of Boston, to recover an alleged excess of duty imposed upon a certain consignment of carpenters' pincers, scythes, and grass-hooks, imported from Antwerp in March, 1889.

The collector exacted upon this importation a duty of 45 per cent under the last clause of schedule C of the tariff act of March 3, 1883, c. 121, 22 Stat. 488, 500, which provides for "manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, . . . or any other metal, and whether wholly or partly manufactured, forty-five per centum ad valorem."

Plaintiff protested against this classification, and in due time brought suit, contending that the articles were dutiable at $2\frac{1}{2}$ cents per pound, under a provision of the same schedule, for "forgings of iron and steel, or forged iron, of whatever shape, or in whatever stage of manufacture, not specially enumerated or provided for in this act."

Upon trial before a jury, the court directed a verdict for the plaintiff, holding the classification of the collector to have been incorrect, and the defendant sued out this writ of error.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

*Mr. Francis Lynde Stetson* for defendant in error. *Mr. Charles P. Searle, Mr. Albert Comstock,* and *Mr. Everit Brown* were on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case raises the single question whether the pincers, grass-hooks, and scythes, which constituted this importation, should have been classified as manufactures of metal, or forgings of iron or steel. All the articles were made of forged steel.

There was no evidence in this case that the word "forgings" was used in any commercial or technical sense among manufacturers, and, in the absence of such evidence, we are bound to presume that it was used in its ordinary and commonly accepted sense of metal shaped by heating and hammering. *Swan* v. *Arthur*, 103 U. S. 597; *Maddock* v. *Magone*, 152 U. S. 368. Of this use of words the court takes judicial notice. *Nix* v. *Hedden*, 149 U. S. 304.

The pincers in question are made of two flat pieces of iron about eight inches long, which are put into the fire, so that one end of each piece is heated. They are then taken out, split at the heated end, and a small piece of steel inserted and welded in to form the bite. They are again heated, the jaws shaped, and a hole punched in each jaw for the reception of the rivet. They are again heated and rehammered to make the shanks round and shape the knob at each end. While cold they are fastened together by a rivet, which is itself hammered out of a rod, the rivet being heated and clinched after it is inserted. The jaws are brought to a point by a

rough file, and are then rubbed, and the whole article polished with an emery wheel. The pincers are then ready for use. The non-forging process bears to the forging process the proportion of 3 to 4 per cent.

The scythes and grass-hooks are made out of flat pieces of metal, which are shaped by forging, and are tempered and again heated to give them the blue color of steel. After this is done they are sharpened upon a grindstone and are then in condition to receive a wooden handle for use. They were not provided with handles at the time they were imported, owing to the high price of wood in Europe.

From the separate enumeration of "forgings of iron and steel" and "forged iron, of whatever shape, or in whatever stage of manufacture," it would seem that Congress intended to distinguish between the two, and to apply the term "forgings," though perhaps not exclusively, to such articles as are completed by the action of the hammer. Hence, we are not prepared to accept the theory of the government in this case that the articles in this paragraph are confined to such as are incomplete, or in process of manufacture, as there may be many articles which would naturally fall within the designation of "forgings" which are finished and ready for use — such, for example, as ornamental iron work, wrought iron railings, and grilles, none of which are subjected to any further process of manufacture. This view is strengthened to a certain extent by the separate enumeration in the same schedule of "anvils, anchors or parts thereof, mill irons and mill cranks, of wrought irons and wrought iron for ships, and forgings of iron and steel, for vessels, steam engines, and locomotives, or parts thereof, weighing each twenty-five pounds or more, two cents per pound." Apparently all of these fall within the same category of forgings, and apply to completed articles.

But we do not understand the term "forgings" to be applicable to articles which receive treatment of a different kind than hammering before they are complete; such, for example, as grinding, tempering, or polishing, although the witnesses agreed that welding and punching are properly forging processes. It may well be doubted, too, whether the

word be applicable to such small articles as tools of trade or the ordinary implements of husbandry. The fact that the further process, which the articles specified in this case underwent, represented but three or four per cent of the total labor expended upon them, is by no means decisive, when it is a question of classification, since the very object of Congress may have been to protect the additional labor. The lines between different articles enumerated in the tariff law are sometimes very nicely drawn, and a trifling amount of labor is often sufficient to change the nature of the article, and determine its classification. Thus in *Worthington* v. *Robbins*, 139 U. S. 337, the merchandise imported was known as "white hard enamel," and was used for various purposes, including the making of faces or surfaces of watch dials, scale columns of thermometers, faces or surfaces of steam-gauge dials, and for other purposes where a smooth or enamelled surface was desired. The articles were claimed by the collector to be dutiable as "watch materials," but as it was shown that their form and condition would have to be changed by grinding or pulverizing, they were held to be dutiable as non-enumerated manufactures.

The articles in question were properly classified by the collector, and the judgment of the court below must therefore be

*Reversed and the case remanded for a new trial.*