THOMAS PROSSER & SON v. UNITED STATES.

(Circuit Court, S. D. New York. February 20, 1907.)

No. 4,057.

1. CUSTOMS DUTIES—RULES OF GENERAL APPRAISERS—AUTHORIZATION BY SECRETARY OF TREASURY.

Under Customs Administrative Act June 10, 1890, c. 407, § 12, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1931], the Secretary of the Treasury is empowered to authorize the Board of General Appraisers to make rules for the avoidance of conflicting decisions.

2. SAME—BOARD OF GENERAL APPRAISERS—RULES—TRANSFER OF JURISDICTION.

A Board of three General Appraisers, which had acquired jurisdiction of a case, and after hearing therein had prepared and signed, but had not promulgated, a decision, transferred the case to another Board; this being in accordance with a rule adopted for the avoidance of conflicting decisions. The latter Board, after giving the parties a rehearing, rendered a decision of opposite effect to that which had been prepared by the former Board. Held, that adoption of a rule for the purpose named was reasonable and commendable, and that such procedure thereunder was valid.

3. SAME—RULES OF GENERAL APPRAISERS—APPROVAL BY SECRETARY OF TREASURY.

The Board of General Appraisers adopted a rule of procedure before the power to enact it had been given by the Secretary of the Treasury, but shortly thereafter the Secretary promulgated a regulation providing that the Board should adopt such a rule. Held that the ratification should be presumed.

4. SAME—CLASSIFICATION—MACHINED FORGINGS.

So-called machined forgings, being such as in addition to the forging process have been subjected to a machining process wholly or partly complete, are not within the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 127, 30 Stat. 160 [U. S. Comp. St. 1901, p. 1637], for "forgings * * * of whatever degree or stage of manufacture."

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 6,069 (T. D. 26,477), affirming the assessment of duty by the collector of customs at the port of New York.

Everit Brown, for importers.
D. Frank Lloyd, Asst. U. S. Atty.

HAZEL, District Judge. The merchandise in controversy consists of heavy forgings of steel, weighing from about 200 to 70,000 pounds, as follows: Crank shaft, piston rod, cross head, crank pin, and connecting-rod forgings. The collector assessed duty thereon at the rate of 45 per cent. ad valorem as manufactures of steel under the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 193, 30 Stat. 167 [U. S. Comp. St. 1901, p. 1645], and such classification was sustained by the Board of General Appraisers. The importers claim the articles are dutiable under paragraph 127 of the same act, which (omitting nonessentials) reads:

"Forgings of iron or steel, or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture, not specially provided for in this act, thirty-five per centum ad valorem."

154 F.—46

The articles are produced by forging; that is, a portion of the forgings are treated to a machine process which removes the rough or scaly surface and smooths it by planing, although by the process of planing they are not reduced wholly to their ultimate size. The piston-rod forgings have been rough turned or rough machined, as technically styled; the crank-axle forgings have been partly rough machined; and the cross head has been fully machined.

The first point insisted upon is that the Board of Appraisers which decided this controversy was without jurisdiction. The record shows that after the filing of the protest the case was regularly sent to Board No. 2 for decision, which Board heard the evidence and arguments of counsel, and in due time prepared and signed a decision sustaining the position of the importers. Such proposed decision, however, was not handed down, for the reason that, after its admission to the general Board of Appraisers in accordance with the prescribed rules of that Board, it was the opinion of the majority of such general Board that the proposed decision was in conflict with prior decisions by the Board and by the Supreme Court of the United States. Thereafter, with the consent of Board No. 2, the protests were reassigned to Board No. 1 for decision. Board No. 1 subsequently decided the questions submitted de novo, the importers participating at the hearing, and from such decision this review is taken.

It is objected by the importers that, as the protests were regularly referred to Board No. 2, there could be no transference to another Board of equal jurisdiction; that, as the different Boards of General Appraisers have co-ordinate jurisdiction, the Board which first obtains possession of the controversy is the legally constituted body to make the final disposition of the questions in dispute. This objection must be overruled for the following reasons: By the customs administrative act (Act June 10, 1890, c. 407, § 12, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1931]), the Secretary of the Treasury is empowered to prescribe rules and regulations for the conduct of the business of the Board of General Appraisers; and by article 1726 of the treasury regulations, as amended December 26, 1903, it was specifically provided that the Board of General Appraisers (which consists of nine members) shall adopt such rules as may be necessary to prevent the promulgation of conflicting decisions (T. D. 24,861). On December 16, 1903, the following rule was adopted by the Board of General Appraisers:

"In order to prevent as far as possible the rendering of conflicting decisions in classification cases by the several Boards, all opinions, before promulgation, shall be submitted to the several Boards on duty at the port of New York, and if a majority of the members of either of said Boards are of the opinion that any proposed decision conflicts with another decision concurrent therewith, or theretofore made by the Board or by the United States courts, the president shall submit the same to all the members of the general Board present at the port of New York; and whenever a majority of said general Board so present shall be of the opinion that a conflict exists, the case shall be reassigned by the president for decision to a Board of three, the majority of those members agree with the majority of said general Board."

The power to enact such rules seems not to have been authorized by the Secretary of the Treasury until December 26, 1903, subsequent to its adoption by the Board, and the point is urged that no ratifica-

tion thereof is shown. A reasonable construction of section 12 of the administrative act is thought to justify the holding that the Secretary of the Treasury was empowered to authorize the Board to prescribe the rule quoted; and as it was in force at the time the protests herein were considered its approval may be fairly presumed.

It is next contended by the importers that the provisions of section 14 of the administrative act, substantially providing for a decision under a protest by a board of three general appraisers, are in conflict with the rule above quoted. It is true that the Board of General Appraisers to which the protest was originally submitted constituted a special tribunal, and its jurisdiction was derived from the statute. United States v. Loeb et al., 107 Fed. 692, 46 C. C. A. 562. But I cannot see any difficulty in investing another Board with jurisdiction, where, for example, the original Board is unable to agree, or where the orderly conduct of the business or disposition of the protest may so require. The reasonableness of a rule or regulation which tends to avoid or lessen conflicting decisions by the Board, or which points out the way to consistent adjudications of litigated questions, is to be commended. That such rule or regulation has the force of law, if legally authorized and promulgated, needs no citation of authorities. The objection to the jurisdiction of Board No. 1 is overruled.

Coming, now, to a consideration of the merits, the importers claim that the evidence introduced by the government before the Board and in this court does not establish a commercial meaning of the words "forgings of iron or steel." This claim, as I understand it, is not refuted by the government, which insists in that relation that it has not attempted to prove a trade designation, but simply gave evidence to show that the term "forgings of iron or steel," as commercially understood, did not include forgings that have been lathed or partly lathed, or rough machined or partly rough machined. It is further claimed by the government that the term "forgings," as that term was defined by the Supreme Court in Saltonstall v. Wiebusch, 156 U. S. 601, 15 Sup. Ct. 476, 39 L. Ed. 549, includes a metal which has undergone a process of heating and hammering, but not that upon which work has been done of the character disclosed by the proofs. The question presented for decision is whether the articles were "forgings of whatever shape or whatever degree or stage of manufacture," or whether they had lost their identity of forgings and had become manufactures of steel. Both sides practically agree that the crucial point hinges on the correct interpretation of the Wiebusch Case, which was under the tariff act of 1883. It was there held that certain articles—pinchers, scythes, and grass hooks—which were manufactured of forged steel were dutiable as manufactures composed wholly or in part of steel; and it was proven, for instance, that after the pinchers were taken from the furnace they were treated by splitting, hammering, heating, and welding, and then, to produce a completed article, they were reheated, filed, rubbed, and polished with an emery wheel. The provision of the tariff act of 1883 contained these words:

"Forgings of iron and steel, or forged iron, of whatever shape, or in whatever stage of manufacture, not specially enumerated or provided for in this act."

· The Supreme Court held that the words "forged iron, of whatever shape, or in whatever stage of manufacture," were not to be taken in a limited sense but had a wider signification than the word "forgings"; and it accordingly held that the articles were not dutiable as forgings. In pointing out the meaning of the term "forgings," the court stated:

"But we do not understand the term 'forgings' to be applicable to articles which receive treatment of a different kind than hammering before they are complete, such, for example, as grinding, tempering, or polishing, although the witnesses agree that welding and punching are properly forging processes. It may be well doubted, too, whether the word be applicable to such small articles as tools of trade or the ordinary implements of husbandry."

In comparing the existing tariff act with the earlier, it will be observed that the words "forged iron" are omitted in the later enactment, while the words "or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture," are included. By such alteration in the phraseology, however, the word "forgings" can not receive a broader scope than was given to it by the Supreme Court in the Wiebusch Case, or than it is entitled to receive by the ordinary meaning of the term. The use of the phrase quoted is thought to relate to the process of forging, and would seem to emphasize the intent of Congress to include in paragraph 127 all forgings, whether produced by heating and hammering or pressing or by equivalent methods. I think the principle enunciated in the Wiebusch Case justifies the conclusion that the articles are no longer forgings, but have become manufactures of metal.

The classification of the collector was right, and the decision of the Board is affirmed.