## IN RE APPEAL OF S. B. FUJIYAMA.

### April 6, 1910.

*Duties—Miso — Unenumerated   articles — Preserved   vegetables — A sauce:* A Japanese product made from beans and rice by processes of cooking and fermentation which change their taste and flavor though not entirely destroying their forms, which has keeping qualities to a moderate extent, known commercially as miso, and generally used for making soup, is properly chargeable with a duty of twenty per cent. ad valorem, sec. 6,

and not with a duty of forty per cent. as "preserved vegetables" or "a sauce," par. 241.

*Same—Similitude:* Because an unenumerated article is dutiable as being substantially similar to an enumerated article, it does not follow that another unenumerated article which is somewhat similar to the first, or is produced by a similar process, is dutiable as similar to the second.

Appeal from decision of Board of General Appraisers under sec. 15, Customs Administrative Act of June 10, 1890 (26 Stat. L. 131).

*W. T. Rawlins,* Ass't. U. S. District Attorney, for the Collector of Customs.

*E. C. Peters,* Attorney for the Appellant.

DOLE, J. In this case the importer protested against the classification of the collector of customs for the port of Honolulu, District of Hawaii. The board of general appraisers affirmed the decision of the collector of customs, from which decision the importer appealed to this court.

Forty-five casks for white miso were classified at the custom house at Honolulu as sauce, under paragraph 241 of the tariff act of 1897, dutiable at the rate of forty per cent *ad valorem.* The ground of the protest of the importer was that miso should be classified as a non-enumerated manufactured article, under section 6 of the tariff act and dutiable only at the rate of twenty per cent *ad valorem.* The general appraisers at New York, after taking evidence and hearing counsel, ruled as follows:

" Boiled beans are the principal if not the only substantial component article. If it were imported in tins, jars, bottles or similar packages it would appear to fall exactly within the provision in the first part of said paragraph (241) for 'beans * * * prepared or preserved.' The miso in question is imported in casks, but it is nevertheless adequately described in the following subdivision of the paragraph as 'vegetables, prepared or preserved,' if not as 'sauce.' The assessment appears to be correct, and the protests are overruled, the collector's decision being affirmed in each case."

The court took considerable testimony on both sides of the question. The witness for the importer was Yamakami, who showed a familiar knowledge of the production of miso, having been, by his own account, a manufacturer of the article for eight years in Japan and having made it once in this Territory. He showed, as far as the court could judge, an intimate knowledge of the process and some understanding of the chemical changes which are a part of it. His examination was exhaustive and from it it appears that white miso is made from a certain kind of Japanese bean, known as daizu, and rice, and that the process is in brief as follows: Rice is first taken, washed and steeped in cold water over night; the water is then drawn off and the rice is steamed and then poured out onto a mat and spread out and seed of malt, or rice yeast known as koji, mixed with it; it is then left in a warm place for about three days undergoing a process of fermentation due to the koji and the temperature. During this time the rice becomes very white, then gradually turns to a greenish color, in which condition "it feels smoky and dusty." While this is going on the daizu beans are washed and boiled or steamed, usually for about twelve hours, then when they are sufficiently boiled, the rice is taken out of the hot room, about twenty per cent of salt added with a little water, then the beans are slightly crushed or mashed enough to break them, and mixed with the fermented rice. The proportion of salt used varies according to the market; if the product is for the Japanese market fifteen per cent instead of twenty per cent is used, but if for the Hawaiian market twenty per cent to keep it from spoiling. The mixed contents, after standing over night, are packed in small tubs for shipment. If for a distant market like Hawaii, it is not then ready for eating, but fermentation during the voyage brings it to the proper condition for eating at the end of the voyage. The effect of mixing the prepared rice with the beans is the fermentation of the whole mass. After the fermentation it is ready for consumption and will keep for some time if in a cool place. It further appeared from his testimony that the fer-

mentation softens the beans by dissolving the protein, and that it creates a taste or flavor, which is different from the bean taste or flavor; until that is accomplished it is not miso. This process does not entirely destroy the shape of the beans. It is necessary for the market that although the beans are crushed they shall not be so crushed as to destroy the original shape of all of them, because then the customers might think that the miso is not made out of whole beans. The bean taste cannot be distinguished in the manufactured article. Generally the proportions of the beans and rice is half and half by measurement; as to weight the rice is the heavier in the proportion of four to three and a half. The rice is the most costly ingredient or component part as compared with the beans. Miso is used for making soup; that is its common use among the Japanese, and it is generally taken at breakfast. The soup is made by taking a quantity of miso in a bowl, mashing it with a wooden stick and adding hot water gradually until the proper stage is reached, and then it is boiled and drank rather than eaten. It is not eaten as a solid, nor as a condiment or as a relish, although it is sometimes, though rarely, used as a kind of salad with the addition of vinegar and pepper. 1st Tr. 28. There is no testimony, either in the record sent up from the general appraisers or in that taken before this court, which supports the conclusion of the collector of customs or the board of appraisers that miso is liable to duty as a sauce.

From the foregoing description of the method of producing miso, I am of the opinion that the process is a process of manufacture and that miso is a manufactured article. It is not preserved beans as counsel for the government contends. It is made from rice and beans, and rice is the component part of chief value, if we may ascertain the chief value from the value of the component parts at the time they were brought together. Although the statute (sec. 7, act of 1897) says, " The component material of chief value" means "that component material which shall exceed in value any other single component material of the article; and the value of each component material

shall be determined by the ascertained value of such material in its condition as found in the article," it seems impracticable to ascertain such comparative value in this article after manufacture. The provision was probably intended to apply to such compounds as leave the component parts sufficiently accessible to examination for the basis of a judgment, such as combinations of different kinds of fibers in one manufacture. In this case the only ascertainable evidence of value is the value of the component parts just before the process of manufacture. The testimony, as has been shown, makes rice the component material of chief value; also as of greater weight than the beans. It would therefore appear that the contention of the government that beans are the important part of this production, is, at least, doubtful and it may be that the rice is of equal, if not greater, importance. The combination is a new article in which the flavor of the beans is lost and presumably that of the rice, although no direct evidence was given on that point. The addition of a fermenting yeast, although not always used, is generally used as a matter of convenience for accelerating the fermenting process. The introduction of salt appears to have two objects, its effect on the taste and flavor of the miso, and its preserving quality, which, according to the desire of the manufacturer for a greater or less lastingness of the product, is introduced in greater or less quantities according as he is manufacturing it for export or for home consumption.

Miso is a new and completed commercial article known and recognized in the trade by a specific and distinctive name other than the names of either of the materials of which it is made. It is put into a completed condition designed and adapted for a particular use. The fact that it is described in the custom house as bean food or that the words bean food are used as an interpretation of the word miso, has no particular weight, as the Japanese do not use any such defining words; and the fact that in Brinkley's Japanese-English dictionary it is defined as "a kind of sauce made of wheat, bean and salt," has no weight,

in view of the testimony before this court. No evidence was placed before the court as to the authority of such dictionary, and the fact that it makes no mention of rice as a component part of miso, may be regarded as evidence of a want of thoroughness.

"It has been repeatedly decided, under the tariff acts, that where an article has been advanced through one or more processes into a completed commercial article, known and recognized in trade by a specific and distinctive name other than the name of the material, and is put into a completed shape designed and adapted for a particular use, it is deemed to be a manufacture." *Erhardt v. Hahn,* 55 Fed. Rep. 273, 275; *Saltonstall v. Wiebusch,* 156 U. S. 601; T. D. No. 22,519, G. A. 4775.

The authorities which construe paragraph 241 relating to vegetables prepared or preserved are to the effect that "It is intended to cover vegetables which have been subjected to limited processes in preparing them for consumption, of which we might cite such illustrations as canned corn, tomatoes, pease, etc. We are convinced that the provision does not include articles in which the manufacturing process has advanced so far that the identity of the vegetable is practically lost, as in the goods under consideration. It would be a somewhat violent construction, for example, to classify a cake baked from meal produced by grinding corn as a prepared vegetable, on the ground that it was prepared corn." T. D. 24,513, G. A. 5361.

Counsel for the government lays much stress on the fact that the process of manufacturing miso does not destroy the form of all the beans used in the process, that is, that some of the beans appear in a broken or whole condition capable of identification. This is not a sufficient circumstance to bring the product within paragraph 241, inasmuch as the character and quality of the bean has undergone so radical a change in condition with the other component parts as to lose its bean flavor and the finished article has a flavor of its own which is not that either of the bean or rice.

Mr. General Appraiser Waite, from whose decision this appeal was taken, in considering a somewhat similar case (T. D. No. 30,924, Abstract No. 22,592, p. 18, Vol. 19, No. 4) rules on a protest against the classification of crushed wheat as wheat under paragraph 234, the importer claiming that it was dutiable as a non-enumerated manufacture under section 6. Mr. Waite, in his decision, said:

"Inspection of the sample which we have before us shows it to be the kernel of the wheat more or less broken and crushed. * * * In many instances the grains or particles are nearly the size of the whole kernel. * * * It certainly is not 'wheat' within the meaning of that term in paragraph 234. Is it then dutiable by similitude as wheat, by virtue of section 7 of the tariff act? It is true the similitude clause provides that in case of similarity in material, quality, texture, or use an unenumerated article shall pay duty at the same rate which is levied on the enumerated article which it most resembles in any of the particulars above mentioned. We do not think, however, that this is a case for the application of that principle. If so, anything made from wheat could be classified as wheat by similitude, no matter how far it may have been removed as a separate and distinct commodity by the application of machinery or work bestowed upon it. Flour in this sense would be similar to wheat; bread would be similar to wheat; and all things made from wheat, or the products of wheat, might, if not enumerated, be classified as wheat. We do not think such is the intention of the law."

We see by this decision that the fact that the sample contained broken kernels and almost whole kernels of wheat, easily identifiable, was not considered as of any significance.

Much has been made in the discussion in this case of the question of the preservation of the article in a permanent condition, although from the evidence it would appear that miso is not intended to last for an indefinite time after it has reached the eatable stage. This is simply an element of the discussion of the question whether miso is a preserved vegetable or a

manufactured article, and hardly necessary then, for either preserved vegetables or manufactured eatables may be of brief or enduring qualities without affecting their liability to duty; and the preservation of the material of vegetables in a process of manufacture which changes their character, does not make them "preserved vegetables" under the act. Certainly preservation is essential to the manufacture of any product from vegetables.

The government cites Treasury Decision No. 28,833, Abstract No. 18,417, in which amasake, put up in cans, was decided to be a preserved vegetable under paragraph 241, and claims that amasake being, as shown by the testimony, the rice component of miso but arrested in its fermentation at a certain point and put up for the market, governs the case of miso. We have no record of the reasons moving the general appraisers in making this decision, and there is nothing before us upon which to base a conclusion that the classification of miso must follow that of amasake. The doctrine of similitude does not follow here; which doctrine is that where a non-enumerated article is substantially similar to an enumerated article chargeable with duty, it shall pay the duty which is levied on such enumerated article. There is no provision that where one article is charged duty through similitude, another article which is similar to that must also be charged with the same duty, and it does not follow that if amasake is similar to a preserved vegetable, miso, which is composed of several articles and in which the process of manufacture is carried much further, must resemble any enumerated article.

While compelled to reverse the decision of the board of general appraisers, I feel satisfied that had it had the benefit of the testimony which was taken before this court, its decision would have been different. Its only testimony was that of a woman who was a restaurant keeper in New York and who furnished miso to her patrons. She evidently knew little about miso, for she said that it was made of beans and rice or beans and oats, and had nothing to say about any process of fermentation or the use of yeast. The general appraisers must have

received the impression from her testimony that miso is a food prepared from the several articles mentioned by simple processes of cooking and combination, to be used in making soup when wanted, and that at such stage it had keeping qualities to some extent, and therefore might be properly rated as "preserved vegetables." The important feature of the process by which both the beans and the rice are changed in character was not referred to by her.

The protest is sustained.