## Ross & Co. *v.* United States (No. 1985).[1]

1. Construction, Paragraph 477, Tariff Act of 1913—"Garden Seeds."
    The expression "garden seeds," in paragraph 477, tariff act of 1913, means seeds for kitchen gardens, and does not include orchard seeds, fruit seeds, nut seeds, agricultural seeds, grass seeds, berry seeds, or flower seeds.

2. Evidence—Judicial Knowledge.
    It is common knowledge that quince seeds are not kitchen-garden seeds.

3. Quince Seeds.
    Quince seeds, being shown to be a drug and the court judicially knowing them not to be garden seeds, are entitled to free entry under paragraph 477, tariff act of 1913, "drugs, such as barks, beans, berries, * * * seeds (aromatic, not garden seeds)" and are not dutiable under paragraph 212 as "seeds not specially provided for."

### United States Court of Customs Appeals, November 25, 1919.

Appeal from Board of United States General Appraisers, Abstract 43064.

[Reversed.]

*Allan R. Brown* for appellants.
*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Oct. 17, 1919, by Mr. Brown and Mr. Lawrence.]

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

De Vries, Judge, delivered the opinion of the court:
An importation of quince seeds at the port of New York was classified and rated for duty as "seeds not specially provided for"

---

[1] T. D. 38203 (37 Treas. Dec., 228).

within paragraph 212 of the tariff act of 1913. Protestants, who are the appellants here, claim the seeds entitled to free entry as seeds, aromatic, not garden seeds, under paragraph 477 of that act. The exact phraseology, the foundation of appellants' claim, is "drugs, such as barks, beans, berries, * * * seeds (aromatic, not garden seeds), seeds of morbid growth, * * *." The collector's return to the board, dated September 27, 1918, recites that his assessment of duty was in accordance with the advisory classification returned by the appraiser upon the invoice "and more particularly described in the special report herewith." The appraiser's special report, dated September 18, 1918, declares "the merchandise in question consists of quince seeds used in the preparation of drugs or for the purpose of administering or applying drugs or medicines, either internally or externally."

This view of the appraiser was fully corroborated at the trial before the board. Mr. W. F. Haasa, jr., an accepted pharmacologist and chemist, testified that quince seeds were by the books and in the druggist trade, wholesale and retail, recognized as suitable for and commonly used as a drug (cybonium[1]) having healing properties. This question and answer were then had:

Q. Is this commodity recognized generally as an aromatic seed?—A. Yes, it has a slight—it is not as aromatic as some of the seeds, but it is recognized as an aromatic seed.

All the foregoing consistent and corrobative evidence stands without the slightest impeachment or any attempt at such in the record.

As the seeds are concededly in their natural state and crude there seems to be no escape from the conclusion that they fall squarely within the term "seeds (aromatic)", as used in said paragraph 477.

Counsel for the Government, however, insists that admitting such to be true, and conceding the importation established as seeds "aromatic," nevertheless, appellants must fail as they have not shown by proof that the merchandise is "not garden seeds," which the delimitating provision of said paragraph requires in order to establish the right to free entry thereunder.

In support of the last-stated contention the Government maintains that the term "garden seeds" in this connection used, in the absence of an established commercial usage, includes every kind and class of seeds grown in a "garden" as that term is commonly understood and lexicographically defined. In amplification the Century Dictionary and Cyclopedia definition of "garden" is cited as follows:

A plot of ground devoted to the cultivation of culinary vegetables, fruits, or flowering and ornamental plants. A garden for culinary herbs and roots for domestic use is called a *kitchen garden;* one for flowers and shrubs, a *flower garden;* and one for fruits, a *fruit garden.*

[1] REPORTER'S NOTE.—Though spelled "cybonium" in the record, this word should be "cydonium."

The Government's brief, after quoting definitions of a quince as a fruit, concludes:

It logically follows, therefore, that if the quince is a *fruit*, and a garden is a place set apart for the cultivation of *fruits*, as well as flowers and vegetables, quince seeds which may be used for propagation are garden seeds.

Long-continued departmental practice is also invoked by the Government, claiming that such interpretation has classed quince seeds, germinative, as garden seeds. The court is not satisfied that such a uniform practice has obtained.

The phrase "garden seeds" appeared as an import tariff term as early as 1874 (Revised Statutes of the United States, sec. 2504, p. 480, 2d ed.) and repeatedly since in various tariff acts. It has frequently been the subject of departmental and judicial interpretation.

The United States Supreme Court in Ferry *v.* Livingston (115 U. S., 542), in 1885, reviewed in extenso the earlier congressional employment and departmental interpretation of the phrase. The court therein approved a conclusion of the United States Circuit Court for the Eastern District of Michigan, predicated upon use, as follows:

But we are of the opinion that the conclusion arrived at by the Circuit Court, based on the facts it found, was correct. Beets, other than sugar beets, being almost altogether raised in gardens, although raised to a limited extent in fields, their seeds are "garden seeds." Mangelwurzels being cultivated wholly in fields, and not in gardens, their seeds are not "garden seeds." Turnips being largely raised in fields, and comparatively small quantities being also raised in gardens, their seeds are not "garden seeds." As to the cabbage seeds, it is found that cabbages from the seeds in question are cultivated in both gardens and fields, and while it is not found which is the larger in proportion, it is found that cabbages are used to a small extent as food for cattle, but to a much larger extent as food for man; and, *in the absence of any finding* that the seed in question belongs to a variety which is not intended to raise cabbages to be consumed by man, *it must be regarded* as a "garden seed." (Italics ours.)

In Robertson *v.* Salomon (130 U. S., 412) that court, in holding certain commercial testimony should have been admitted, strongly intimated the case could have been decided on common knowledge, and declared of its common knowledge of the scope of the term "garden seeds" as used in the tariff act of 1883:

If white beans are to be classed as "garden seeds," then the original decision of the collector was right. This decision, however, has been abandoned, and we think very properly. Although beans are often planted in gardens as seed, yet as a product and a commodity in the market they are not generally denominated as "garden seeds," any more than potatoes, which are also sometimes planted as seed in gardens. The same consideration also applies in regard to the use of the more general term "seeds." We do not see why they should be classified as seeds any more than walnuts should be so classified. Both are seeds in the language of botany or natural history, *but not in commerce nor in common parlance.* (Italics ours.)

On the other hand, in speaking generally of provisions, beans may well be included under the term "vegetables." As an article of food on our tables, whether baked or

boiled, or forming the basis of soup, they are used as a vegetable as well when ripe as when green. *This is the principal use to which they are put* Beyond the common knowledge which we have on this subject, very little evidence is necessary or can be produced. (Italics ours.)

In Nix *v.* Hedden (149 U. S., 304) that court exercised its common knowledge as to the scope of the term "fruit" as used in the tariff act of 1883 and classified an importation according to its use as determined by the judicial knowledge of the court, saying:

The passages cited from the dictionaries define the word "fruit" as the seed of plants, or that part of plants which contains the seed, and especially the juicy, pulpy products of certain plants covering and containing the seed. These definitions have no tendency to show that tomatoes are "fruit," as distinguished from "vegetables," in common speech, or within the meaning of the tariff act.

There being no evidence that the words "fruit" and "vegetables" have acquired any special meaning in trade or commerce, *they must receive their ordinary meaning. Of that meaning the court is bound to take judicial notice,* as it does in regard to all words in our own tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court. Brown *v.* Piper (91 U. S., 37, 42); Jones *v.* United States (137 U. S., 202, 216); Nelson *v.* Cushing (2 Cush., 519, 532, 533); Page *v.* Fawcet (1 Leon., 242); Taylor on Evidence (8th ed., secs. 16, 21). (Italics ours.)

Botanically speaking, tomatoes are the fruit of a vine, just as are cucumbers, squashes, beans, and peas. But in the common language of the people, whether sellers or consumers of provisions, all these are vegetables, which are grown in *kitchen gardens*, and which, whether eaten cooked or raw, are, like potatoes, carrots, parsnips, turnips, beets, cauliflower, cabbage, celery, and lettuce, usually served at dinner in, with, or after the soup, fish, or meats which constitute the principal part of the repast, and not, like fruits generally, as dessert. (Italics ours.)

The attempt to class tomatoes with fruit is not unlike a recent attempt to class beans as seeds, of which Mr. Justice Bradley, speaking for this court, said: "We do not see why they should be classified as seeds, any more than walnuts should be so classified. *Both are seeds in the language of botany or natural history, but not in commerce nor in common parlance.* On the other hand, in speaking generally of provisions, beans may well be included under the term 'vegetables.' As an article of food on our tables, whether baked or boiled, or forming the basis of soup, they are used as a vegetable, as well when ripe as when green. This is the principal use to which they are put. Beyond the common knowledge we have on this subject, very little evidence is necessary, or can be produced." Robertson *v.* Salomon (130 U. S., 412, 414). (Italics ours.)

In Sonn *v.* Magone (159 U. S., 417) that court had before it a similar question, saying:

The predominant use of lentils and beans is for food, and as so used they are commonly called vegetables, although they may be regarded botanically as seeds, and may sometimes be used for seeding purposes. Under such circumstances *ordinary use,* not occasional or subsequent use, *furnishes the guide for classification.* Maillard *v.* Lawrence (16 How., 251); Worthington *v.* Robbins (139 U. S., 337); Magone *v.* Heller (150 U. S., 70). The words "seeds" and "vegetables" are words of common speech, and there is no room here for the contention that they had acquired a special signification by usage or had a scientific, different from the popular, meaning. Whether the articles were properly classified as vegetables was a matter for the court to decide. The interpretation of words of common speech is within the judicial knowledge and matter of law. Marvel *v.* Merritt (116 U. S., 11); Nix *v.* Hedden (149 U. S., 304);

Cadwalader *v.* Zeh (151 U. S., 171); Saltonstall *v.* Wiebusch (156 U. S., 601). (Italics ours.)

The repeated use of the phrase "garden seeds" in subsequent tariff acts after rendition of the above decisions of the United States Supreme Court must be held a congressional approval thereof; in consequence whereof Congress must be deemed to have used the term in the present act not in its inclusive sense but in a limited sense, determinable according to use ascertained by commercial testimony or in its absence by the exercise of the common knowledge.

An analysis of the foregoing decisions, in the light of the different kinds of "gardens" defined in the Century Dictionary and Cyclopedia, as *"fruit gardens," "flower gardens,"* and *"kitchen gardens,"* the latter "a garden for culinary herbs and roots for domestic use," leads to the conclusion that the "garden seeds" referred to in said paragraph 477 were those for kitchen gardens, and is not intended to include orchard seeds, fruit seeds, nut seeds, agricultural seeds, grass seeds, berry seeds, or flower seeds, but those seeds of vegetables commonly grown in the kitchen gardens for human consumption. Quince seeds obviously are not of this class. They, therefore, are not "garden seeds" within the term as used in said paragraph 477. Common knowledge so advises. Not being "garden seeds" and being "aromatic," as is clearly established by this record, they are properly classifiable for duty purposes under claimed provisions of paragraph 477.

*Reversed.*