58 CCPA

### The UNITED STATES, Appellant,

v.

### J. GERBER & CO., Inc., et al., Appellees.
### Customs Appeal No. 5378.

United States Court of Customs
and Patent Appeals.
Feb. 11, 1971.

Third Division of the United States Customs Court, 62 Cust.Ct. 368, C.D. 3773. The consolidated protests, which were sustained, involved steel forgings imported from Germany into the port of Jacksonville, Florida, in 1964–66.

The trial court held that they were:

" * * * dutiable at 10.5 per centum ad valorem under the following TSUS item classification, as entered, viz:

> Forgings of iron or steel, not machined, not tooled, and not otherwise processed after forging:

608.25 Other than alloy
iron or steel ........10.5% ad val.
rather than under the item classificaation determined by the collector, [and urged by appellant here,] viz:

> Pipe and tube fittings of iron or steel:

> \* \* \* \* \* \*

610.80 Other fittings ...19% ad val.

The articles in question are stipulated by the parties to consist of:

> * * * forgings of steel other than alloy steel, which have not been machined, tooled, or otherwise processed after forging, which forgings are in the shape of pipe or tube flanges, and are dedicated to use as flanges for pipes or tubes.

> Appellees equate a flange with a fitting and agree that these flanges are dedicated to use as pipe fittings."

We are satisfied that the trial court correctly sustained the protests, and we affirm. The articles involved were placed under the trial court's observation in the form of a representative sample. They are rough steel disc-shaped objects about 5″ in diameter with a round centered opening. They are forgings, it is undisputed, and they are also dedicated for use as pipe or tube fittings of steel. The court received an exhibit illustrative of the finished flange after further advancement following importation. Four holes are drilled through the outer portion of the disc, and the whole is smoothed and polished.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Patrick D. Gill, New York City, for the U. S.

Alfred R. McCauley, Washington, D. C., attorney of record, for appellee; Graubard, Moskovitz & McCauley, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NICHOLS, Judge, United States Court of Claims, sitting by designation.

NICHOLS, Judge.

This is an appeal by the United States, appellant, from a decision of the

■ In classifying the imports under Item 610.80 the collector relied primarily on TSUS General Interpretative Rule 10(h), which provides that for purposes of the tariff schedules:

> (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

In effect, therefore, the articles were classified as pipe or tube fittings of iron or steel, unfinished. We conclude, however as the trial court did, that Rule 10(h) does not require classification of these articles as unfinished pipe or tube fittings when they are also forgings described in Item 608.25.

A resort to the doctrine of relative specificity does not give the answer, whether we consider the items themselves or the "superior headings." This court has repeatedly stated that the test is: which item is the most difficult to satisfy? Humphreys v. United States, 407 F.2d 417, 56 CCPA 67, C.A.D. 956; F. L. Smidth & Co. v. United States, 409 F.2d 1369, 56 CCPA 77, C.A.D. 958; United States v. Simon Saw & Steel Company, 51 CCPA 33, C.A.D. 834. Here, we may assume that some forgings are not pipe and tube fittings and some pipe and tube fittings are not forgings. There was a time when iron and steel articles were just about all forged, but forging is relatively expensive, requiring heavy equipment and skilled labor, and for cheapness other forms of iron and steel have come into use where the application permits. Forging produces a higher quality metal and is used when less costly methods will not do. *Tariff Information Surveys* (1921). Paras. 106 and 107 of the Tariff Act of 1913, p. 14 and ff. Moreover, any further advancement, however minor, takes the article out of the tariff category of a forging. Saltonstall v. Wiebusch, 156 U.S. 601, 15 S.Ct. 476, 39 L.Ed. 549 (1895). There are no technical information or trade statistics in the record which would enable us to determine, in the circumstances, which of the two tariff items is the most difficult to satisfy, and we may not resort to our own possibly mistaken impressions of how things are.

Plaintiff correctly points out that the Tariff Commission, in formulating the schedules for the 1962 Act, first intended to abandon the old para. 319(a), 46 Stat. 590, which provided for:

> forgings of iron or steel—not machined, tooled or otherwise advanced —by any process—subsequent to the forging process.

and to substitute different language, but then changed its mind, and in the *Tariff Classification Study*, First Supplemental Report, January 1962, Miscellaneous Series TC, recommended the item, 608.25, quoted above, which Congress adopted, and which varies in no material respect from the old para. 319(a). As a matter of fact, the provision for iron and steel forgings as a specifically enumerated tariff item has been the practice of Congress continuously since para. 167 of the Tariff Act of 1883, 22 Stat. 488:

> Forgings of iron or steel, or forged iron, of whatever shape, or in whatever stage of manufacture, not specially enumerated or provided for in this act. * * *.

Essentially the same language is contained in para. 139 of the 1890 Act, 26 Stat. 567, para. 115 of the 1894 Act, 28 Stat. 509, and para. 127 of the Act of 1897, 30 Stat. 151. In para. 123 of the 1909 Act, 36 Stat. 11, we first see the language "but not machined, tooled, or otherwise advanced in condition by any process or operations subsequent to the forging process." The reason for this amendment, we are told, was "so as to state precisely in what degree of finishing or completion forgings may be improved without being considered as advanced from the class of forgings for tariff purposes." *Notes on Tariff Revision, Prepared For the Use of The Committee on Ways and Means, House of Representatives, 60th Cong.,* 1908, p. 154. Apparently, the Congress felt that such

an amendment would do away with the need to litigate the advancement question in most cases, as in Saltonstall v. Wiebusch, *supra*. Thus the language of present Item 608.25 has remained substantially unchanged since the Act of 1909. In view of this unbroken policy, and the intent generally not to change duty rates in the 1962 enactment (see discussion of this in Smidth, *supra*,) we would look for plain indications before finding elsewhere in the schedules an intent to detract from the impact these forgings items have historically had.

The existing schedules and their predecessors all reflect a Congressional disposition to deal with the characteristic products of the steel industry by their names as known in transactions between that industry and its customers, rather than as unfinished parts of end products: thus, there are always tariff items for forgings, plates, sheets, etc. The reasons for this are obvious and frequently surface: the former dominant world position of the U.S. steel industry and of one company, U.S. Steel, therein, and its former lack of need for tariff protection relative to the need of end product industries for protection—to put it bluntly—against the domestic steel industry as well as against imports. We refer, of course, to the years when the separate tariff treatment of forgings, etc., became established, and not to the present day. *Cf.* American Mannex Corp. v. United States, 56 Cust.Ct. 31, C.D. 2608 (structural shapes of iron or steel).

It would be obvious that assessing duty on materials and components used by an end product industry at the same rate as the duty on the end products themselves would in many cases be tantamount to denying tariff protection to the end product industry: the end product industry would need a higher rate to benefit materially from the tariff laws.

The trial court cites, and we think properly, United States v. The Singer Mfg. Co., 37 CCPA 104, C.A.D. 427, as indicating the proper principles, even though it deals with iron castings, not forgings. The involved articles were rough unmachined castings claimed dutiable as such under para. 327, as against the collector's classification as unfinished parts of machines under para. 372. We doubted whether "castings of iron are ever made without a predetermined ultimate use which determines the form in which the castings are made" (p. 107), held that para. 327 governed, and expressly disapproved a prior decision of the Customs Court which had held that iron castings in the condition in which they had left the foundry, but dedicated as parts of machines, were dutiable under the machine provision, para. 372, and not as castings.

The scanty record herein includes an admission by the Customs Officer who furnished the collector the advisory classification under Item 610.80, which he adopted, that he knows of no forging that was not "dedicated to a particular use." The forgings he had seen, he could "either guess or know what they ultimately would be", and he had seen no forging that puzzled him. The trial court justly observed that on the record before it, it would "have to doubt that forgings are ever made without a predetermined ultimate use which determines the form in which the forgings are made." Appellee vehemently urges that appellant's approach would eliminate all scope wherein the forgings item might operate. Appellant denies this, but whether it is so or not, it appears to us that appellant has failed to give proper weight to the reasons why the Congress has so long insisted on dealing with forgings as a separate tariff item rather than as unfinished end articles or components thereof.

The report on forgings, *cit. supra*, shows that imports of forgings were insignificant though forgings intermittently were on the free list, and exports were substantial, that American producers of forgings had a great advantage over their foreign competion because the heavy and costly equipment required, wherever used, was of United States manufacture and available more readily

in the United States and that a substantial, perhaps major portion of forgings were products of the steel industry, the remainder being produced independently. As well as being the world's largest producer of forgings, the United States was also the largest consumer. Other reports are to the same effect.

■■ We agree with the trial court that the phrase in General Interpretative Rule 10(h) "unless the context requires otherwise" is meant to withdraw the Rule from operation wherever classification of an unfinished article under the provision for the completed article would come into conflict with any express declarations of Congress elsewhere set forth, that require otherwise. Thus the rule might be effective to save an unfinished article from being classified under a mere basket item written from a horror of leaving any import unprovided for, but it is ineffective by its own terms against a specific provision that implements a policy of Congress, consciously arrived at and clearly stated. Congress has historically wanted forgings to be classed and dealt with as forgings, and has put into the new schedules nothing to state a contrary intention now.

The judgment of the Customs Court is therefore *affirmed.*

Affirmed.