60 CCPA

The UNITED STATES, Appellant,

v.

The SERVCO COMPANY, Appellee.

Customs Appeal No. 5509.

United States Court of Customs and Patent Appeals.

May 10, 1973.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Frederick L. Ikenson, New York City, for the U. S.

Robert Glenn White, Los Angeles, Cal. (Glad & Tuttle, Los Angeles, Cal.), attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Third Division, 68 Cust.Ct. ——, C.D. 4341 (1972), sustaining appellee's protest against the classification of certain steel products imported from Austria under TSUS 610.52, as modified by T.D. 68–9, as other tubes, not welded, jointed, or seamed, not conforming to the API specifications for oil well casing, not suitable for use in the manufacture of ball or roller bearings, and of alloy iron or steel. The Customs Court held the merchandise classifiable as parts of boring and extracting machinery for earth, minerals, or ores under TSUS 664.05. We affirm.

The merchandise consists of tubular steel products, 30 feet long, $2^{13}/_{16}$ inches in inside diameter, and either $6^{1}/_{4}$ or 8 inches in outside diameter, described on the commercial invoices as "AM Non-Magnetic semi-finished austenitic stainless survey Drill Collar without Threading and without welded steel subs acc. to specifications * * * ."

The argument of appellant, the United States, revolves primarily about the application of General Interpretative Rule 10(h), which states:

[U]nless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished * * * .

Appellant's brief notes that the Customs Court, in deciding between the two provisions, stated that the tube provision, TSUS 610.52, "is not a specific provision for pipes and tubes which are identifiable parts of articles," relying on Schedule 6, Part 2, Headnote 1(iv), which states that Part 2 of Schedule 6 does not include articles specially provided for elsewhere in the Tariff Schedules, or parts of articles. Appellant says that the Customs Court "apparently considered the claimed provision for boring machinery and parts (in conjunction with General Interpretative Rule 10(h) to remove the merchandise from Part 2 * * * ."

Appellant here takes issue with that finding, asserting error in the Customs Court having "concluded that the subject tubes were excluded from the tube provision by virtue of Schedule 6, Part 2, Headnote 1(iv), and embraced by the boring machinery parts provision, by virtue of General Interpretative Rule 10(h)."

Appellant's brief tells us why this exclusion and resultant classification is believed to be improper (footnotes omitted):

Schedule 6, Part 2, Headnote 1(iv) excludes from said Part 2 (which part includes the subject tube provision) "other articles specially provided for elsewhere in the tariff schedules, or parts of articles." The imported tubes are neither such "articles . . . [n]or parts of articles." They are, by the Customs Court's own understanding, "unfinished" parts (R. 56–57)—but that does not qualify them as falling within the headnote. General Interpretative Rule 10(h) applies the "unfinished" rule only to *tariff descriptions* of articles, which Headnote 1(iv) is not, and even then, only *if the context does not require otherwise*. Part 2 of Schedule 6 covers basic shapes and forms of metal, including tubes. It would be a severe dilution of Part 2, if basic shapes and forms are excluded therefrom because they are to be finished into articles or

parts of articles. Cf. United States v. J. Gerber & Co., 58 CCPA 110, C.A.D. 1013, 436 F.2d 1390 (1971).

In *Gerber,* this Court was asked to decide whether forgings, which were dedicated to be finished into pipe or tube fittings, were properly classifiable under the provision for forgings or under the provision for pipe and tube fittings (by virtue of General Interpretative Rule 10(h)). Holding that "Rule 10(h) does not require classification of these articles as unfinished pipe or tube fittings when they are also forgings . . ." ([436 F.2d at 1392] 58 CCPA at 112), this Court observed (*id.* [436 F.2d at 1393, 58 CCPA] at 113–114):

The existing schedules and their predecessors all reflect a Congressional disposition to deal with the characteristic products of the steel industry by their names as known in transactions between that industry and its customers, rather than as unfinished parts of end products: thus, there are always tariff items for forgings, plates, sheets, etc.

\* \* \* \* \* \*

The Court concluded (*id.* [436 F.2d at 1394, 58 CCPA] at 115):

We agree with the trial court that the phrase in General Interpretative Rule 10(h) "unless the context requires otherwise" is meant to withdraw the Rule from operation wherever classification of an unfinished article under the provision for the completed article would come into conflict with any express declarations of Congress elsewhere set forth, that require otherwise. Thus the rule might be effective to save an unfinished article from being classified under a mere basket item written from a horror of leaving any import unprovided for, but it is ineffective by its own terms against a specific provision that implements a policy of Congress, consciously arrived at and clearly stated. Congress has historically wanted forgings to be classed and dealt with as forgings, and has put into the new schedules nothing to state a contrary intention now.

Appellant's position here is also that the merchandise is a basic shape—a tube—which is a designation of a characteristic product of the steel industry within the meaning of the above quotation from *Gerber,* and that, like the forgings there, the tubes here ought to be classified according to the industry designation. Finally, appellant maintains that the contrary result of the court below would, at the very least, remove from the tube provision of Schedule 6, Part 2, the substantial class of mechanical tubes which are finished into other articles or parts.

OPINION

We state at the outset that we do not agree with appellant's position that affirming the Customs Court decision in this case would have the effect of removing the provision for that class of tubes in Schedule 6, Part 2. The case here is limited to its own facts, which the Customs Court described in detail, relating specifically to the survey drill collars here involved. Appellant even assumes, for the purpose of this appeal, the correctness of the findings of the Customs Court that the imported articles had no other use but to be finished into drill collars, and that drill collars were used solely as parts of boring machinery.

Appellant's main argument, summarized in the above quotation from its brief, seems to be that the Customs Court—in "apparently" considering General Interpretative Rule 10(h) to remove the imported tubes from the application of Schedule 6, Part 2, Headnote 1(iv), which headnote excludes "other *articles* specifically provided for elsewhere in the tariff schedules, or *parts of articles*" (emphasis supplied)—erroneously applied the General Interpretative Rule because (1) the Rule only "applies \* \* \* to *tariff descriptions* of articles, which Headnote 1(iv) is not, and" (2) "even then, [if it applies, it does so] only *if the context does not require oth-*

*erwise"* (which appellant maintains is the case here), and (3) the J. Gerber case, interpreting Rule 10(h) says the Rule does not apply by its own terms where it would operate to prevent classification of an article under a specific provision implementing a policy of Congress such as the congressional disposition to deal with characteristic products of the steel industry according to their industrial designations.

We cannot agree with appellant's basic assumption that the Customs Court considered General Interpretative Rule 10(h) to apply to the language of Headnote 1(iv).* Perhaps appellant's reason (1) explains why the Customs Court did not rely upon the Rule; we do not know. At any rate, since we do not find that Rule 10(h) was relied upon below for not classifying the drill collars in Part 2, we do not find it necessary to consider appellant's arguments that Rule 10(h) was erroneously relied on in this manner.

To the extent that appellant relies upon the language of *J. Gerber* for the general proposition that there is a congressional disposition in the tariff schedules to deal with the characteristic products of the steel industry by their industry names, we note that the case involved the *forgings* designation with respect to which there may indeed have been a strong disposition in Congress to classify forgings as forgings, rather than as unfinished parts of end products. See John v. Carr & Son, Inc. v. United States, 66 Cust.Ct. 316, C.D. 4209 (1971). We do not find any such comparable congressional disposition here that all "tubes" be classed and dealt with as tubes. Cf. *Carr,* supra.

Accordingly, having fully considered the record and appellant's argument, we *affirm* the judgment of the Customs Court.

Affirmed.

* The Customs Court did consider the application of General Interpretative Rule 10 (h) to the parts of boring machinery provision, *item 664.05,* finding "the *unfinish-*

*ed* drill collars classifiable as *finished* parts for boring machinery." [Emphasis supplied.]