**NISSHO IWAI AMERICAN CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 81-7-00992.**

United States Court of International Trade.

Nov. 7, 1984.

ed therein); *Caswell v. Califano,* 435 F.Supp. 127, 132–33 (D.Me.1977).

Sharretts, Paley, Carter & Blauvelt, P.C., New York City (Peter J. Baskin and Ned H. Marshak, New York City, of counsel), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch and Judith M. Barzilay, New York City, for defendant.

NEWMAN, Senior Judge:

This action represents a sequel to *The Servco Company v. United States*, 68 Cust.Ct. 83, C.D. 4341 (1972), a decision of our predecessor, the United States Customs Court, and affirmed by the Court of Customs and Patent Appeals, 60 CCPA 137, C.A.D. 1098, 477 F.2d 579 (1973).

### Background

Plaintiff contests the classification for customs duty purposes of certain metal products imported from Japan in 1979 and 1980, invoiced as "pipe fittings" or "pipe fittings pin and box" and referred to in the complaint as "tool joints". Customs at the Port of Houston, Texas classified the imports under the provision in item 610.80, Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, for pipe fittings of iron or steel and assessed duty at the rate of 11 percent ad valorem. Plaintiff claims that the classification of the articles by Customs under item 610.80 is incorrect, and that they are properly dutiable under the provision for parts of boring machinery in item 664.05, TSUS, at the rate of 5 percent ad valorem, or in its superseding provision pursuant to Presidential Proclamation 4707, item 664.08,

TSUS at the rate of 4.7 percent ad valorem (depending on the date of entry).[1]

Presently before the Court are: defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the rules of the Court and alternative motion for summary judgment under Rule 56; plaintiff's opposition thereto and cross-motion for summary judgment. Defendant's reply brief concedes that summary judgment "is the appropriate route for the disposition of this case".

### Statutory Provisions Involved

*Classified under:*

Schedule 6, Part 2: Metals, their alloys and their basic shapes and forms

Part 2 Headnotes:
  1. This part covers ... base metals ... their alloys and their so-called basic shapes and forms ... This part does not include—

\*　　　\*　　　\*　　　\*　　　\*

(iv) other articles specifically provided for elsewhere in the tariff schedules, *or parts of articles.* [Emphasis added.]

Subpart B.   —Iron or Steel

*Subpart B Headnotes:*

  1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.

\*　　　\*　　　\*　　　\*　　　\*

Pipe and tube fittings of iron or steel:

\*　　　\*　　　\*　　　\*　　　\*

610.80  Other fittings . . . . .  11% ad val.

*Claimed under:*

Schedule 6, Part 4: Machinery and Mechanical Equipment

Part 4 Headnotes:
  1. This part does not cover—

\*　　　\*　　　\*　　　\*　　　\*

---

1. By Presidential Proclamation 4707, item 664.-08 was substituted for item 664.05 for entries on and after January 1, 1980. Hereinafter, refer-ences to item 664.05 shall mean either item 664.05 or 664.08, depending on date of entry, unless otherwise noted.

**90**

(v) articles and parts of articles specifically provided for elsewhere in the schedules.

*      *      *      *      *

Subpart B— ...

*      *      *      *      *

[For entries prior to January 1, 1980:[2]]

664.05   Mechanical shovels, coalcutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow-plows, not self-propelled; all the foregoing and parts thereof ....... 5% ad val.

[For entries on and after January 1, 1980:[3]]

Mechanical shovels, coalcutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow-plows, not self-propelled; all the foregoing and parts thereof:

*      *      *      *      *

664.08   Other ............. 4.7% ad val.

### Issue Presented

Central to this controversy is the question of whether the imported tool joints are excluded from classification under item 610.80, TSUS by virtue of headnote 1(iv), schedule 6, part 2, as urged by plaintiff, or whether the imports are excluded from classification under item 664.05 by operation of headnote 1(v), schedule 6, part 4, as contended by defendant.

### The Facts

The material facts are not in dispute:

The tool joints in issue are parts of a drill stem which is a part of drilling (boring) machinery. Specifically, the imports are used to connect two pieces of drill pipe in a drill string (lengths of drill pipe, each about thirty feet long, connected by tool joints) and are specially designed and constructed to sustain the weight of a drill stem and to withstand the strain of frequent coupling

and uncoupling. A "drill string" is the column, or string, of drill pipe with attached tool joints that transmits fluid and rotational power to the drill collars and bit. Based upon their form and general function, the imported merchandise falls within the generic description of "pipe fittings" and the articles were so described on the commercial invoices in the entry papers. After importation, the tool joints are welded to the lengths of drill pipe in order to provide a means of connecting the lengths of pipe in the drill string. Drill collars are also used, but only at the bottom of the drill stem for the purpose of putting weight on the drill bit.

In addition to its statement of material facts—as to which, concededly, there is no genuine issue to be tried—plaintiff submitted an affidavit (with certain attachments) by Raymond W. Kearney, Jr., president of Monarch Metals Corporation, a sales representative for various steel products imported by plaintiff. According to the Kearney affidavit, which is uncontroverted by any evidentiary submission by defendant, the tool joints in question are used solely as parts of drilling (boring) machinery in the drill stem, sustain the weight of the drill stem, and withstand the strain of frequent coupling and uncoupling. Significantly too, the affidavit points up that the tool joints have no other use, as demonstrated by the inability of plaintiff's customers to find alternative uses for excess tool joints imported at the height of the recent oil well drilling boom in the United States.

Annexed to and supportive of Kearney's affidavit are: Figure 1.1 of the API Specification for Rotary Drilling Equipment, issued by the American Petroleum Institute, Washington, D.C., API Spec. 7, 32d Ed., May 1979, depicting the various components of a drill stem assembly; portions of the Glossary of Terms appearing in *A Primer of Oil-Well Drilling* published by the Petroleum Extension Service of the University of Texas at Austin (4th Ed. 1979); and a narrative explanation of the

---

**2.** *See* note 1, *supra.*

**3.** *See* note 1, *supra.* What had been item 664.05 became the superior heading to item 664.08 as well as to several other new breakout items.

components of a drill stem from the *Primer*. In the *Primer*, the terms "drill stem", "drill string" and "tool joint" are defined as follows (at pp. 84 and 93):

> drill stem *n:* all members in the assembly used for drilling by the rotary method from the swivel to the bit, including the kelly, drill pipe and tool joints, drill collars, stabilizers, and various subsequent items. Compare *drill string* [italics in original].

> drill string *n:* the column, or string, of drill pipe with attached tool joints that transmits fluid and rotational power from the Kelly to the drill collars and bit. * * *

> tool joint *n:* a heavy coupling element for drilling· pipe made of special-alloy steel. Tool joints have coarse, tapered threads and seating shoulders designed to sustain the weight of the drill stem, withstand the strain of frequent coupling and uncoupling, and provide a leakproof seal. The male section of the joint, or the pin, is attached to one end of a length of drill pipe, and the female section, or box, is attached to the other end. The tool joint may be welded to the end of the pipe or screwed on or both. A hard-metal facing is often applied in a band around the outside of the tool joint to enable it to resist abrasion from the walls of the borehole.

Given the undisputed facts that the tool joints in issue are generically "pipe fittings" and that they are parts of drilling machinery (*viz.*, the drill stem), the resolution of this case rests upon the applicability of the competing provisions and the pertinent exclusionary headnotes in parts 2 and 4 of schedule 6, TSUS. For the reasons that follow, the Court finds that there is no genuine issue as to any material fact, and that plaintiff is entitled as a matter of law to summary judgment.

### Opinion

#### 1.

Briefly, plaintiff contends that notwithstanding the fact the tool joints are generically "pipe fittings," they are excluded from classification under item 610.80, TSUS by virtue of exclusionary headnote 1(iv) of part 2, schedule 6 (excluding "parts of articles") because the imports concededly are parts of boring machinery. Further, plaintiff argues that since the imports are not provided for by item 610.80, neither exclusionary headnote 1(v), part 4, schedule 6 nor General Interpretative Headnote 10(ij) precludes classification of the merchandise as parts of boring machinery under item 664.05, TSUS.

Defendant advances the argument that the imported articles are specifically provided for in item 610.80, TSUS as "pipe fittings," and consequently even assuming that they are parts of boring machinery, classification of the articles under item 664.05 is precluded by virtue of exclusionary headnote 1(v), part 4, schedule 6 and General Interpretative Rule 10(ij). Moreover, defendant maintains that exclusionary headnote 1(iv), part 2, schedule 6 does not preclude classification of the imports under item 610.80 because they are not specifically provided for in item 664.05.

#### 2.

The precedent most directly in point, and heavily relied upon by plaintiff, is *The Servco Company v. United States, supra.* *Servco* involved drill collars (a part of the drill stem) consisting of a tube of steel imported in 30 foot lengths and solely used in boring machinery for the purpose of applying weight to the drill bit. Customs classified the drill collars as pipes and tubes of steel under item 610.52 which, like item 610.80—the "classified" provision .in the present case—comes within schedule 6, part 2, subpart B, TSUS. The importer claimed that the drill collars were classifiable as parts of boring machinery under item 664.05 [4]—the "claimed" provision here. In support of its classification, the Government stressed that the drill collars are "tubes" within the common meaning of the term, and contended that even assuming the articles are parts of boring machinery, the tariff provision for tubes (item

---

4. Item 664.08 was not involved in *Servco.*

610.52) is more specific than the tariff provision for parts of boring machinery (item 664.05). Consequently the Government there urged, that the former provision must prevail over the latter by virtue of General Interpretative Rule 10(ij).[5] Further, defendant maintained in *Servco* that under headnote 1(i) and (v), part 4, schedule 6, "tubes" and "parts of articles specifically provided for elsewhere in the schedules" are excluded from classification under item 664.05.

While recognizing that in common meaning drill collars are generically tubes, the Customs Court nevertheless concluded in *Servco* that the tariff provision for tubes in item 610.52 does not cover a product solely or chiefly used as part of an article, and that notwithstanding headnote 1(v), part 4, schedule 6, the drill collars were properly classifiable as parts of boring machinery under item 664.05, as claimed by plaintiff. The Court pointed out (68 Cust.Ct. at 88):

> * * * [P]art 2, subpart B is intended to classify so-called basic shapes and forms of iron or steel, * * *. Schedule 6, part 2, headnote 1(iv), * * * which states that it does not include in any of its subparts, * * * other articles specially provided for elsewhere in the tariff schedules, or parts of articles, is obviously intended to exclude basic shapes and forms of metal, * * * that are specially provided for elsewhere in the tariff schedules. *The headnote, in our opinion, also excludes identifiable parts of an article solely or chiefly used as a part of an article provided for, with its parts, in a superior heading of the tariff schedules.* * * [Emphasis added.]

Continuing, the Court added (68 Cust.Ct. at 89):

> The Brussels general note on parts [footnote omitted], vis-a-vis pipes and tubes, read with the exclusionary note on heading 73.18 of the Nomenclature confirms our view that, in general, schedule 6, part 2 is intended to include basic shapes

and forms of metal including pipes and tubes of iron or steel, which have general use, *and to exclude tubes and pipes made up into specific identifiable articles.* [Emphasis added.]

In sum, our predecessor court in *Servco* carefully considered the relationship of headnotes 1(iv), part 2, schedule 6 and headnote 1(v), part 4, schedule 6 to merchandise included within the common meaning of the terms describing those steel articles classified in part 2, and determined that identifiable parts of boring machinery, such as drill collars, are classifiable under item 664.05 rather than under a provision in part 2, schedule 6.

As noted, *supra,* the decision of our predecessor court in *Servco* was affirmed by the Court of Customs and Patent Appeals. While the Appellate Court limited *Servco* to its own state of facts, this Court sees no material difference between the facts in *Servco* and those in the present case. "While it is true that a decision in any case rests upon the particular facts thereof, only a material difference in such facts will render the case inapplicable in a subsequent proceeding". *United States v. Esso Standard Oil Co.,* 42 CCPA 144, 150, C.A.D. 587 (1955).

In both *Servco* and the instant case, the merchandise was classified by Customs under the provisions of schedule 6, part 2 and generically is described by the provisions of part 2. That the present case involves tool joints used to connect lengths of pipe in a drill string, classified by Customs as pipe fittings under item 610.80, while *Servco* concerned drill collars used to apply weight to the drilling bit, classified by Customs as pipes and tubes under item 610.52, has no significance from the standpoint of the legal issue presented. Importantly, exclusionary headnote 1(iv), part 2, schedule 6 is as applicable to item 610.80 as to item 610.52; and as *Servco* held, item 610.52 does not embrace identifiable parts of an article provided for in item 664.05. Since

5. Rule 10(ij) of the General Headnotes and Rules of Interpretation, TSUS, provides, so far as pertinent, that "a provision for 'parts' of an article * * * does not prevail over a specific provision".

the tool joints are identifiable parts of a drill stem, as were the drill collars in *Servco,* the tool joints are excluded from classification under item 610.80 by virtue of headnote 1(iv). In short, with respect to the tool joints at issue, this court reaffirms the soundly reasoned principle of *Servco* that identifiable parts of boring machinery are excluded from classification in schedule 6, part 2 by virtue of exclusionary headnote 1(iv). *Cf. John V. Carr & Son, Inc. v. United States,* 72 Cust.Ct. 19, C.D. 4500 (1974), also following the reasoning of *Servco.*

3.

Defendant urges that *Servco* has no relevance to the current case. In particular, defendant insists that *Servco* dealt with totally different merchandise than that involved here, and "[a]s a matter of fact, the only similarity between this case and *Servco* is the claimed provision." (Deft's response to plaintiff's cross-motion for summary judgment, at 2.) Thus, defendant attempts to distinguish the drill collars in *Servco* from the tool joints in the present case on the ground that "tool joints do not significantly contribute to the boring function of the drill stem," and they "act as any coupling element would and are not functionally integrated with the drilling bit (as is the drill collar) so as to become a part of it for tariff classification purposes". (Deft's response to plaintiff's cross-motion for summary judgment, at 7.) This "back door" attempt by defendant at this juncture to dispute that the tool joints are parts of boring machinery must be rejected inasmuch as defendant previously admitted that the tool joints are parts of a drill stem which is part of boring machinery. *See Defendant's Response To Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried, at paragraph 3.* Indeed, Kearney's uncontroverted affidavit and the attachments thereto leave no doubt that all members of the drill stem assembly from the swivel to the bit, including the tool joints, are integral parts of boring machinery.[6] Hence, there is no genuine issue as to whether the tool joints are parts of boring machinery.

4.

Defendant devotes a substantial portion of its memoranda to its contention that tool joints fall within the common meaning of the term "pipe fittings". However, as the Customs Court recognized in *Servco,* the common meaning of a term used in the provisions of part 2, schedule 6 is not dispositive of classification under part 2 in light of exclusionary headnote 1(iv). Therefore, the cases cited by defendant for the common meaning of the term "pipe fittings", but which did not involve the application of exclusionary headnote 1(iv), are inapposite to the present case.

5.

In support of its motion for judgment on the pleadings, defendant relies upon, *inter alia,* the absence in the complaint of a specific allegation that the tool joints are not pipe fittings, as classified by Customs. This Court does not view the absence of such allegation as fatal to plaintiff. In point of fact, the complaint leaves no doubt as to plaintiff's position that the imports are not "pipe fittings" for tariff classification purposes, but rather are parts of boring machinery. Moreover, while it is true that the imports are pipe fittings in a generic sense and were so described on the invoices, these facts are not dispositive of the legal issues presented by the exclusionary headnotes in parts 2 and 4, schedule 6, the legislative history of item 664.05, and the *Servco* decision.

6.

Defendant's argument that headnote 1(iv), part 2, schedule 6 does not exclude the imports from classification under item 610.80 because they are not specifically provided for in item 664.05 may be quickly resolved. Since headnote 1(iv) excludes

---

**6.** *See* Figure 1.1 of the API Specification for Rotary Drilling Equipment, issued by the American Petroleum Institute, API Spec. 7, 32nd Ed., May 1979, depicting the components of a typical drill stem assembly, and showing that tool joints, like drill collars, are integral parts of the same assembly.

from part 2, schedule 6, "parts of articles" as well as "other articles specially provided for elsewhere in the tariff schedules" (*John V. Carr & Son, Inc., supra*), it is immaterial whether or not tool joints are specially provided for in item 664.05, or whether boring machinery is merchandise specially provided for within the purview of headnote 1(iv). Accordingly, this Court concludes that *United States v. Miracle Exclusives*, 69 CCPA 42, 668 F.2d 498 (1981) and *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 69 CCPA 128, 673 F.2d 1268 (1982), cited by defendant, are not pertinent to the issues presented here.

7.

We reach plaintiff's argument that heading 84.23 of the *Brussels Nomenclature* represents an appropriate source of legislative history for the scope of item 664.05. In *Servco*, the Customs Court noted that the language of heading 84.23 is substantially the same as that of the superior heading to item 664.05.[7] Heading 84.23 of the *Brussels Nomenclature* covers:

> EXCAVATING, LEVELLING, TAMPING, BORING AND EXTRACTING MACHINERY, STATIONARY OR MOBILE, FOR EARTH, MINERALS OR ORES (FOR EXAMPLE, MECHANICAL SHOVELS, COAL–CUTTERS, EXCAVATORS, SCRAPERS, LEVELLERS AND BULLDOZERS); PILE–DRIVERS; SNOW–PLOUGHS, NOT SELF–PROPELLED (INCLUDING SNOW–PLOUGH ATTACHMENTS).

Our predecessor court relied upon the following Explanatory Note to heading 84.23 as directly relevant to its determination:

> Subject to the general provisions regarding the classification of parts (see General Explanatory Note on Section XVI), other parts of the goods of the present heading are classified here, e.g.:

> \*    \*    \*    \*    \*    \*

2) Rotary tables, swivels, kellies, kelly drive bushings, *tool-joints, drill collars*, subs, drill pipe guides, stop-collars, spider bowls, split bushing slips, beams, swivel sockets, drilling jars and drill stems and pipes, for well drilling machines (rotary or percussion). [Emphasis added.]

Clearly, therefore, the foregoing explanatory note to heading 84.23 of the Brussels Nomenclature indicates that the tool joints were intended to be classified in the same provision as drill collars, *viz.*, item 664.05.

Defendant contends that the merchandise here does not come within heading 84.23 of the *Brussels Nomenclature* because that heading is subject to the same kind of exclusionary headnote as the TSUS provisions in issue. Also, defendant maintains that the subject tool joints come within heading 73.20 of the *Brussels Nomenclature* which covers tube and pipe fittings of iron or steel "mainly used for connecting the bores of two tubes together, or for connecting a tube to some other apparatus, or for closing the tube aperture." But defendant admits that drill collars are not within the purview of heading 73.20 because they are not "mainly used for connecting the bores of two tubes together." And it is clear that heading 84.23—the genesis of item 664.05—was intended to encompass *both* tool joints and drill collars, *since tool joints and drill collars are specifically named in the Explanatory Note as an example of boring machinery parts which come within heading 84.23.* Obviously, if the framers of the *Brussels Nomenclature* had intended tool joints to come within heading 73.20, rather than heading 84.23, they would not have expressly named tool joints as an example of merchandise to be classified in heading 84.-23.

8.

Defendant's reference to the *Summaries of Trade and Tariff Information*, schedule

---

7. See e.g. *Kyocera Industrial, Inc. v. United States*, 2 CIT 91, 527 F.Supp. 337 (1981), *aff'd*, 69 CCPA 168, 681 F.2d 796 (1982); *Schwarz v. United States*, 57 CCPA 19, C.A.D. 971, 417 F.2d 1391 (1969) and *Toyota Motor Sales, U.S.A. Inc.*

*v. United States*, 7 CIT ——, 585 F.Supp. 649 (1984), for the proposition that the *Brussels Nomenclature* is an appropriate source of legislative history of the TSUS where the language of both are similar.

6, volume 4, at 251 (1967) as an indication that pipe fittings for the petroleum industry were intended to be encompassed by item 610.80, TSUS is not helpful in the resolution of the particular issue before the Court. The portion of the *Summaries* relied upon by defendant reads:

> Pipe fittings serve to join lengths of pipe in a straight line and to change the direction of a piping system; they also provide access for cleaning the system and a means for branching the system, as well as of reducing the diameter of its pipe. Pipe fittings are available in a variety of shapes, some of the most common of which are couplings, L'S, T'S, reducers, traps, and caps. The pipe fittings included in this summary are used in a variety of piping systems and in a wide range of other applications. Some are used in conjunction with stove pipes or pipe railings, for example, whereas others meet the rigorous requirements of the gas, oil, chemical and power industries and of the producers of missiles, airplanes, submarines and ships.

> Steel fittings, which are by far the principal products included here, are generally used with steel pipes in systems subject to high pressures and temperatures....

Fundamentally, of course, the *Summaries* do not represent a source of legislative history of the TSUS. *Hawaiian Motor Co. v. United States,* 67 CCPA 42, 46, C.A.D. 1241, 617 F.2d 286 (1980); *Volkswagen of America, Inc. v. United States,* 68 Cust.Ct. 122, 128–29, C.D. 4348 (1972), *aff'd,* 61 CCPA 41, C.A.D. 1115, 494 F.2d 703 (1974). In any event, there is no indication in the *Summaries* that identifiable parts of boring machinery were intended to be covered by item 610.80 rather than item 664.05.

### 9.

Defendant's argument that the subject merchandise must be classified as pipe fittings under item 610.80, rather than as parts of boring machinery under item 664.-05 pursuant to General Interpretative Headnote 10(ij),[8] is likewise without merit. As recently held by our Court of Appeals in

*E.R. Hawthorne & Co., Inc. v. United States,* 730 F.2d 1490, 1491 (Fed.Cir.1984): "The effect of headnote 1(iv) of part 2, schedule 6, is to render the Headnote 10(ij) 'specificity test' inapplicable to schedule 6, Part 2." The Appellate Court went on to find in *Hawthorne* that the articles in controversy were properly classifiable as *parts* of illuminating articles notwithstanding they were also tubes or pipes.

### 10.

Finally, we turn to defendant's contention that headnote 1(v) in part 4, schedule 6 compels classification of the tool joints in item 610.80 and precludes their classification under item 664.05. Defendant's argument assumes that the tool joints are specially provided for as pipe fittings under item 610.80, and hence are excluded from item 664.05 by virtue of headnote 1(v).

As previously noted, our predecessor court in *Servco* held that item 610.52 "is not a specific provision for pipes and tubes which are identifiable parts of articles". 68 Cust.Ct. at 88. In support of that conclusion, the Court cited headnote 1(iv) in part 2 of schedule 6 and the Brussels Nomenclature. By its terms, headnote 1(iv) is applicable to all articles classifiable in part 2 and does not distinguish "pipes and tubes" from "pipe and tube fittings". As we have observed, headnote 1(iv) of part 2, schedule 6 expressly excludes "parts of articles" from the purview of the part 2 provisions (which includes item 610.80). *See John V. Carr & Son, Inc., supra,* 72 Cust.Ct. at 24. Since the tool joints (identifiable parts of a drill stem) are not specially provided for in item 610.80, headnote 1(v) of part 4, schedule 6 does not exclude the imports from item 664.05.

Significantly too, the legislative history of item 664.05, as set forth in the Explanatory Notes to heading 84.23 of the Brussels Nomenclature makes it clear that tool joints (as well as drill collars) were intended by the drafters of the tariff schedules to be classified under item 664.05. Plainly, then, headnote 1(v) should not be construed

---

**8.** See note 5, *supra.*

or applied in such a manner as to defeat that intent. It should also be stressed that notwithstanding headnote 1(v), the drill collars in *Servco* were held to be properly dutiable under item 664.05, and the same result should be reached in the present case respecting the tool joints. For these reasons, this Court cannot agree with defendant's contention that headnote 1(v) of part 4, schedule 6 excludes tool joints from classification as parts of boring machinery under item 664.05.

### 11.

In summary, the Court finds that there is no justiciable issue as to any material fact, and that plaintiff is entitled to summary judgment as a matter of law. This Court holds, therefore, that the imported tool joints are classifiable as parts of boring machinery under item 664.05 or item 664.-08, TSUS (depending upon the date of entry), as claimed by plaintiff; and that by virtue of headnote 1(iv) of part 2, schedule 6, the imports are excluded from the provisions of item 610.80, TSUS for pipe fittings, as classified by Customs.

Accordingly, it is hereby ordered that:

1) Defendant's motion for judgment on the pleadings and alternative motion for summary judgment are denied;

2) Plaintiff's motion for summary judgment is granted.[9]

---

**9.** Defendant's answer included as a first separate defense a motion to dismiss as to entry 150536 under protest 53019001001 on the ground that the protest concerning this entry was untimely. However, it must be noted that the entry in question was not listed on plaintiff's summons, and is thus not involved in this action. The Court wishes to make clear that since entry 150536 was not listed on the summons, the judgment in this case is inapplicable to that entry.