W.Y. MOBERLY, INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 81–9–01259.

United States Court of International Trade.

May 28, 1986.

Ross & Hardies (Joseph S. Kaplan, John B. Pellegrini and Eric S. Palles), Chicago, Ill., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office; Commercial Litigation Branch, Civil Div., Dept. of Justice (John J. Mahon), New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiff challenges the United States Customs Service (Customs) classification of disassembled components of oil drilling rigs as "lattice masts ... and other structures and parts of structures ... of iron or steel ... other" under item 652.98, Tariff Schedules of the United States (TSUS), and 652.-99, TSUS, the successor provision to item 652.98, TSUS.

Plaintiff claims the merchandise is properly classified as "boring ... machinery ... for earth, minerals or ores ... and parts thereof" under item 664.05, TSUS, or alternatively, as "columns, pillars, posts, beams, girders, and similar structural units ... other" under item 652.94, TSUS.

Defendant argues that Customs classification of the merchandise invoiced as "sheaves" was erroneous, and that the sheaves are properly classifiable as "pulleys and shaft couplings, and parts thereof" under item 680.50, TSUS.

The Court holds that the parts of the mast, substructure, floor assembly, and engine stand are classifiable as parts of structures under items 652.98 or 652.99, TSUS, and that the sheaves are classifiable as pulleys under item 680.50, TSUS.

The questions presented are:

(1) whether structural components of drilling rigs concededly described under tariff provisions for parts of structures and parts of boring machinery are classifiable as parts of structures under General Interpretive Rule 10(ij), which provides that part of a particular part is more specifically

provided for as a part of that part (structures) than as a part of a whole (boring machinery), or as parts of boring machinery, under the principle that an article described by two provisions is classifiable under the item which more specifically describes it;

(2) whether, if the imported merchandise is classifiable as parts of structures under General Interpretive Rule 10(ij), it is more specifically provided for as "columns, pillars, posts, beams, girders and similar structural units," under item 652.94, TSUS; and

(3) whether under General Interpretive Rule 10(ij), the sheaves are specifically described as "pulleys", under item 680.50, TSUS.

The parties stipulate that:

1) The merchandise involved in this civil action consists of fabricated components of three oil drilling rigs designated as Penrod 24, 25 and 27.

2) Each imported fabricated component is a subcomponent of one or more of the following drilling rig sections:

a) mast; b) substructure; c) floor assembly; d) engine stand.

3) The oil drilling rigs of which the imported components are parts are transportable rigs. The components themselves, in their imported condition, are designed for and capable of repeated assembly and disassembly and transportation from site to site by truck.

4) Certain of the imported components i.e., deadline breakover sheave with rear raising frames with pins and safety pins, fastline breakover sheave and slingline equivalent function only in the course of assembly and disassembly of the rig. Each of the remaining components constitutes a subcomponent of one or more of the four major rig sections identified in paragraph 2 above.

5) The imported components are dedicated to use as parts of a specific complete oil drilling rig and have no other utility.

6) Except for the sheaves, which when in use rotate on an axis, the imported subcomponents and the major sections described in paragraph 2 into which they are made up, are stationary when in use in oil drilling.

7) In addition to the imported components, the following components, which were not included in the imported merchandise, are part of the additional equipment needed in order to create a complete drilling rig: hook, block, drawworks, drill line, drill pipe, motive power, rotary table, catworks, catheads, tongs, hydraulic breakout devices, doghouse and drilling console.

8) The section identified as the floor assembly, among other functions, supports the hook load of 1,125,000 lbs., the casing load of 1,000,000 lbs., and the drill pipe load of 600,000 lbs.

9) The section identified as the engine stand, among other functions, supports the weight of the engines, 15,000 to 20,000 lbs., in addition to helping to support the hook load.

10) The section identified as the mast, among other functions, supports the racking board, crown assembly, drill line, hook block, elevators, boom and the wind load.

11) The section identified as the substructure, among other functions, supports the mast and in turn the hook load.

Pretrial Order, Schedule C.

It is not disputed that the imported articles, when assembled, comprise structural components of drilling rigs, and are described by the tariff provision for parts of structures. It is also undisputed that the drilling rigs are "boring machinery", and the imported merchandise are parts of boring machinery.

The dispute between the parties is essentially a legal one. Plaintiff argues that the merchandise is classifiable under the item that more specifically describes the merchandise, and since the provision for parts of boring machinery is more specific than the provision for parts of structures, the

merchandise is classifiable as parts of boring machinery. Plaintiff also argues that the *Nomenclature for the Classification of Goods in Customs Tariffs* (Customs Co-Operation Council, 1955) (Brussels Nomenclature) persuasively indicates that Congress provided for the merchandise in item 664.05, TSUS.

Defendant contends that under General Interpretative Rule 10(ij), TSUS, a provision for parts of a part prevails over a provision for parts of a whole, and since the merchandise consists of parts of structures that are parts of drilling rigs, the merchandise is classifiable as parts of structures.

General Interpretive Rule 10(ij), provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

Although the Brussels Nomenclature is a source for ascertaining legislative intent where the languages of the TSUS and Brussels are similar, *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 CIT ——, 585 F.Supp. 649, 655 (1984), *aff'd*, 753 F.2d 1061 (Fed.Cir.1985); *Jarvis Clark Co. v. United States*, 733 F.2d 873, 875 n. 2, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984), the Court observes that the Brussels Nomenclature, published seven years before enactment of the TSUS by the Tariff Classification Act of 1962, Pub.L. 87–456, contains no instruction similar to General Interpretive Rule 10(ij) with respect to classification of parts, and therefore provides no guidance in this case.

Congress' intent in enacting General Interpretive Rule 10(ij) is found in the *Tariff Classification Study*, published November 15, 1960, prior to the enactment of the TSUS and considered an important source of legislative history. *See United States v. Andrew Fisher Cycle Co.*, 57 CCPA 102, 106–07, C.A.D. 986, 426 F.2d 1308, 13110 (1970). The *Tariff Classification Study* describes the purpose of General Interpretive Rule 10(ij) as follows:

At the present time, much uncertainty exists in connection with the tariff treatment of parts of articles. In some instances, a mere provision for "parts" prevails over much more specific descriptions in the tariff schedules. Even certain "universal" components such as nuts, bolts, screws, and so forth, are sometimes classified as parts of a particular article according to their type and specific uses. *In the proposed schedules, specific provision is made for the more usual components of articles. Under the rule expressed in headnote 10(ij), these specific provisions will prevail over a mere provision for "parts" of a particular article.*

*Tariff Classification Study of 1960, Submitting Report,* at 19 (emphasis added). The Additional Explanatory Notes and Background Materials of the *Seventh Supplemental Report* of the *Tariff Classification Study,* published a year after enactment of the TSUS, states at 99:

General headnote 10(ij)—*Parts.* A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" is more specific than a provision for "articles, not specially provided for", but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" (items 653.30–.40) "pumps" (items 660.90–661.15), etc.

Plaintiff says cases cited by defendant as applying General Interpretive Rule 10(ij) "are based on the premise that the provision under which merchandise is correctly classifiable is the more specific of the competing provisions," *Plaintiff's Pretrial Legal Memorandum,* at 5, and argues in effect that General Interpretive Rule 10(ij) applies only where the provision for the "part" is more specific than the provision for "parts of the whole."

Plaintiff is correct that each of the cases cited by defendant in support of the principle that a part of a part is more specifically provided for as a part of the part than as a part of the whole also supports the proposition that an article described in two or more provisions is classifiable in the provision which most specifically describes it.

*See Korody-Colyer Corp. v. United States,* 66 Cust.Ct. 337, C.D. 4212 (1971) (nozzles used as parts of fuel injection pumps incorporated into engines were properly classified as parts of pumps rather than as parts of engines); *Foster Wheeler Corp. v. United States,* 61 Cust.Ct. 166, C.D. 3556, 290 F.Supp. 375 (1968) (parts of converters used in a machine are classifiable as parts of converters, not parts of machines); *C.F. Liebert v. United States,* 60 Cust.Ct. 677, C.D. 3499 (1968) (parts of clutches used in winches classifiable as parts of clutches rather than as parts of winches).

But the "premise" of these cases is the principle of General Interpretive Rule 10(ij), not, as plaintiff states, that the merchandise is classifiable under the more specific provision. Further, plaintiff misreads the case it cites for the principle that parts are covered in the more specific provision, *Arthur J. Humphreys v. United States,* 59 Cust.Ct. 231, C.D. 3128, *aff'd,* 56 CCPA 67, C.A.D. 956, 407 F.2d 417 (1969). At issue in *Humphreys* was the classification of cabinets for radio-phonograph combinations. The Court found that the cabinets were furniture, but were also part of the radio-phonograph combination, and held the cabinets classifiable as part of the whole (radio-phonograph combination) rather than as a part (furniture). Plaintiff says the Court's holding is attributable to its finding that the provision for the whole was more specific than the one which described the part. In fact, the Customs Court held, and the appellate court affirmed, that General Interpretive Rule 10(ij) did not apply since the part provision was not a "specific provision" within General Interpretive Rule 10(ij). The part provision covered "furniture, and parts thereof, *not specially provided for* " (emphasis added). Merchandise is not "specifically" described within the meaning of General Interpretive Rule 10(ij) by a "basket" provision for "articles, not specially provided for." *J.E. Bernard & Co. v. United States,* 62 Cust.Ct. 536, C.D. 3822, 299 F.Supp. 1129 (1969), *aff'd,* 58 CCPA 91, C.A.D. 1009, 436 F.2d 506 (1971); *Ideal Toy Corp. v. United States,* 63 Cust.Ct. 406, C.D. 3926 (1969), *aff'd,* 58 CCPA 9, C.A.D. 996, 433 F.2d 801 (1970).

Plaintiff argues, implicitly, that the provision for "structures and parts of structures" is so broad that it does not "specifically" describe the merchandise within meaning of General Interpretive Rule 10(ij). The Court disagrees.

Tariff items have been held to be "specific" under General Interpretive Rule 10(ij) where merchandise is covered by name or function. *See, e.g., J.E. Bernard & Co. v. United States,* 59 Cust.Ct. 31, 36, C.D. 3060 (1967) (electrical components specifically covered by "other electrical apparatus for making ... or breaking electrical circuits" to preclude classification as parts of projectors).

"Structure" has been defined for tariff purposes as "anything composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use." *United States v. Paul M.W. Bruckmann,* 65 CCPA 90, 93, C.A.D. 1211, 582 F.2d 622 (1978), quoting *Simon, Buhler & Baumann, Inc. v. United States,* 8 Ct.Cust.App. 273, 276, T.D. 37537 (1918); *S.G.B. Steel Scaffolding and Shoring Co. v. United States,* 82 Cust.Ct. 197, 211–213, C.D. 4802 (1979).

■ This definition is broad, but the scope of the tariff provision is limited by application of the rule of *ejusdem generis.* Where there is an enumeration of specific words of description (*e.g.* "hangars and other buildings, bridges, bridge sections, lockgates, towers, lattice masts, roofs, roofing, frameworks etc.") followed by a general term (*e.g.* "other structures or parts of structures") the rule of *ejusdem generis* aids in statutory construction. *See Merck & Co. v. United States,* 19 CCPA 16, 18, T.D. 44852 (1931). Under the rule of *ejusdem generis,* which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. *United States v. Damrak Trading Co.,* 43 CCPA 77, 79, C.A.D. 611 (1956). Thus, plaintiff's suggestion that parts of

an oil drilling rig not typically considered to be structures—such as the hook, the travelling block, the draw works, and the drill line—would be classifiable as parts of "structures" under item 652.98, TSUS, is misguided, since those parts of the rig are not of the same kind as hangars, bridges, lock-gates, towers, and the other examples. *See S.G.B. Steel Scaffolding and Storing Co.*, 82 Cust.Ct. at 215–218.

■ The Court follows *J. Ray McDermott & Co. v. United States*, 69 Cust.Ct. 197, 208, C.D. 4394 (1972). In *McDermott* the merchandise at issue included an oil platform "jacket", a three-legged tripod-like portion of an offshore drilling platform. The jacket was classified under item 652.98, TSUS, as "other structures or parts of structures." Plaintiff alternatively claimed classification as part of boring machinery under item 664.50, TSUS. The Court rejected that claim, stating:

> Even if the platform structure may be regarded as a part of boring machinery, which is doubtful, the jacket is more specifically provided for as a part of a structure than as part of boring machinery. A part of a particular part is more specifically provided for as a part of the part than as a part of the whole.

69 Cust.Ct. at 208 (footnote omitted).

Although, as plaintiff says, the articles in this action are undoubtedly parts of boring machinery, since the merchandise is integral to the drilling operation and has no commercial identity apart from parts of oil drilling rigs, *see Nissho Iwai American Corp. v. United States*, 8 CIT 264, 602 F.Supp. 88 (1984), this fact does not distinguish *McDermott* from this action. The "part of a part" principle applied in *McDermott* is equally applicable in this action. The Court holds that the provision for "structures and parts thereof" describes the function of the imported merchandise.

■ In the event the mast parts were not parts of structures the mast components would nonetheless be classifiable under items 652.98 and 652.99, TSUS, since the mast components, when assembled, are "lattice masts" which are *eo nomine* pro-vided for in the superior heading to items 652.98 and 652.99, TSUS. "Lattice" is defined as "a framework or structure of . . . metal made by crossing laths or other thin strips so as to form a network." *Websters' Third New International Dictionary* 1277 (1961).

Plaintiff argues that the term "lattice mast" is not known to the petroleum industry, and therefore does not apply to the assembled imported components. Proof of commercial designation is a question of fact, *Tower & Sons v. United States*, 11 Ct.Cust.App. 261, T.D. 39080 (1922), for which plaintiff had the burden of proof, since the burden of establishing commercial designation rests upon the party arguing that the commercial meaning of a term differs from its ordinary meaning. *United States v. Simon Saw & Steel Co.*, 51 CCPA 33, 38, C.A.D. 834 (1964).

Plaintiff's witness Frederick Pheasey, Chairman of Dreco, Ltd. of Edmonton, Alberta, manufacturer of the merchandise, stated that the mast portion of assembled merchandise was not a lattice mast because the mast had a "rigid frame". Plaintiff's witness Donald W. Gaddy, Chief Engineer at Penrod Drilling Company of Houston, Texas, which purchased the merchandise, said that the mast was not a lattice mast because lattice masts are made of "tubular construction." Both Pheasey and Gaddy said the mast is known in the industry as a "cantilevered mast." Plaintiff's final witness, Joe Fowler, of Stress Engineering Services, Inc., a consulting engineering company based in Houston, conceded that the assembled mast had "some elements of a lattice structure," but said the mast was better described as a "space frame" or "built-up column." The Court finds the testimony of these witnesses inconsistent and ambiguous.

The Court finds more persuasive the testimony of defendant's witnesses, Dr. Augusto L. Podio, Professor of Petroleum Engineering at the University of Texas at Austin, and Paul Borg, Vice-President of Pyramid Manufacturing Company of Hous-

ton, a manufacturer of drilling equipment, who testified that the mast when assembled, met the following specifications of the American Petroleum Institute (API) for Drilling and Well Servicing Structures 4E:

> *3.8 Portable Mast Without Guylines-Static.* A portable mast without guylines is generally a rectangular cross section structure, *latticed on three or four sides*, of welded, bolted or pinned construction; is assembled at or near ground level; attached to a substructure; is raised as a unit to the drilling position and is not dependent upon external guying for stability [emphasis added].

The specification for "Portable Mast Without Guylines-Dynamic" contains the same language as to latticing *i.e.,* "latticed on three or four sides."

The Court holds that plaintiff has failed to establish a commercial meaning of "lattice masts" different than the common meaning and which would exclude the assembled imported merchandise.

Plaintiff also argues that even if the assembled components are a lattice mast within the common meaning of the term, the fact that the assembled articles are known as "cantilevered masts" in the trade precludes classification as "lattice masts". But the term "lattice masts" is generic, and the fact that the merchandise may be commercially known by a specific name ("cantilevered masts") is insufficient to exclude the merchandise from classification under the generic term ("lattice masts"). *See S.G.B. Steel Scaffolding & Shoring Co. v. United States,* 82 Cust.Ct. 197, 210, C.D. 4802 (1979). *Heads & Threads, Division of MSL Industries, Inc. v. United States,* 60 Cust.Ct. 308, 314, C.D. 3374, 282 F.Supp. 484, 489–90 (1968). According to plaintiff's witnesses Pheasey and Gaddy the term "cantilevered mast" in the trade refers to masts assembled horizontally and then raised to the vertical position. The imported mast components could be described as parts of "cantilevered lattice masts."

If the components of the masts were not classifiable as parts of structures, the Court would hold that they are parts of "lattice masts" which are *eo nomine* provided for in the superior heading to items 652.98 and 652.99, TSUS. Applying General Interpretive Rule 10(ij), the Court alternatively holds that the imported components of masts are properly classifiable under items 652.98 and 652.99, TSUS, as parts of lattice masts which are in turn parts of oil well drilling rigs.

■ Plaintiff argues that if the imported articles are parts of structures, they are parts of structures more specifically provided for as "columns, pillars, posts, beams, girders and similar structural units" under item 652.94, TSUS. This claim also fails.

Plaintiff makes two arguments that the merchandise is within item 652.94, TSUS. First, plaintiff says that the merchandise when assembled, comprise "built-up columns." But the merchandise did not enter as complete articles and, since item 652.94, TSUS, has no provision for parts, this claim fails.

Second, plaintiff says that the various components of the mast, substructure, floor assembly and engine stand, in their condition as imported, are "columns, pillars, posts, beams, girders, and similar structural units," within item 652.94, TSUS.

Since there is no provision for parts in item 652.94, TSUS, this provision has been interpreted to require that the imported merchandise be *"a unitary element* providing ... support to a building or structure". *Laurence Myers Scaffolding Co. v. United States,* 57 Cust.Ct. 333, 340, C.D. 2809, 259 F.Supp. 874, 879, (1966) (emphasis added). *See Frost Railway Supply Co. v. United States,* 39 CCPA 90, C.A.D. 469 (1951). Merchandise is not of "unitary construction" if it "consist[s] of more than one piece of metal." *Id.* at 95.

In its proposed findings of fact, plaintiff proposes no factual findings with respect to its claims under item 652.94, TSUS. If a unitary element was contained in any of the entries, plaintiff does not indicate in its

post-trial brief which of the examples contained in item 652.94, TSUS, it believes describes a unitary element, nor does plaintiff cite to any testimony which supports the classification of any particular fabricated component in its condition as imported under item 652.94, TSUS. The Court finds that the merchandise in this action is not of unitary construction, but consists of various pieces joined by means of lugs, pins or welding, and holds the merchandise is not classifiable under item 652.94, TSUS.

■ Finally, defendant argues that Customs classification of the sheaves is incorrect and that the sheaves are properly classified as "pulleys ... and parts thereof" under item 680.50, TSUS. Plaintiff's witnesses Pheasey and Gaddy testified that sheaves are pulleys. Plaintiff does not oppose this classification in its post-trial brief. Applying General Interpretive Rule 10(ij) the Court holds that the sheaves are specifically provided for as pulleys under item 680.50, TSUS.

To conclude, the Court holds that plaintiff has failed to overcome the presumption of correctness that attaches to Customs classification and applying General Interpretive Rule 10(ij) the parts of the mast, substructure, floor assembly, and engine stand are classifiable as parts of structures under items 652.98 or 652.99, TSUS; and that the sheaves are classifiable under item 680.50, TSUS, as pulleys.

Judgment will be entered accordingly. So ordered.